**FILED**

**JUN - 5 2015**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

*In The*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIN A. PEETERS | : |
| c/o  Katherine A, O'Rourke, Attorney | |
|      Feldesman, Tucker, Leifer, Fidell LLP | : |
|      1129 20th Street, NW, 4th Floor, | |
|      Washington, DC 20036 | : |
|      (202) 466-8960 | |

korourke@feldesmantucker.com

*Plaintiff/Respondent*        :

v.                            :

RONALD S. MLOTEK              :
   8149 East Beach Drive, NW
   Washington DC 20012        :
   (202) 246-7614 (mobile):
   ron.mlotek@yahoo.com       :
   *Defendant/Removant, pro se*

                             :

D.C. Superior Court Case No.
**2013 DRB 004222**
Judge Robert J. Rigsby
**Trial Scheduled: June 10 & 11, 2015**

Case: 1:15-cv-00835
Assigned To : Contreras, Rudolph
Assign. Date : 6/5/2015
Description: Pro Se Gen. Civil (F)

## NOTICE OF REMOVAL
## AND/OR
## PETITION FOR
## WRIT OF PROHIBITION

(1)     Pursuant to the Federal Removal Statute (28 USC §1446), Defendant in the

above-captioned matter, RONALD MLOTEK, hereby respectfully seeks to remove the

above-cited case from the District of Columbia court to this United States District Court,

for adjudication of the uniquely federal questions presented.

(2)     The pending Superior Court action is one for divorce.  However, the

Defendant/Removant underscores that he does *not* seek to have this District Court

RECEIVED
JUN 0 5 2015
Clerk, U.S. District and
Bankruptcy Courts

actually adjudicate the merits of the divorce matter, *per se*.  Instead, removal here is

being sought for solely two, specific and narrow purposes:  (a) to secure the correct

construction of a United States international treaty obligation, to wit: the Vienna

Convention on Diplomatic Relations, 23 U.S.T. 3227. *et seq.* (the "VCDR"); and (b) to

ensure the appropriate application of this treaty to the exceptional facts and circumstances

that make this a matter of first impression.

(3)     The exceptional facts and circumstances are these.  First, Plaintiff in the

divorce is a foreign diplomat — "a member of the [diplomatic] mission", in VCDR treaty

language.  Plaintiff is neither a citizen of, nor permanent resident alien in the U.S.  She

legally lives in the U.S. as a "temporary non-resident alien", who is entitled to work here

under a "diplomatic visa" (category A-2), which authorizes her employment as a member

of a foreign diplomatic mission, the Delegation of the European Union to the United

States.  She enjoys other diplomatic benefits, most notably total exemption from all

Federal, state, and local taxes on her official income.  Quite simply, the Plaintiff/

Removant here is far from a routine litigant in a routine divorce action.

(4)     The second special feature presented is, indeed, the particular character of

actions for divorce.  Specifically, and absent child custody questions, the primary, and

typically only issue in dispute is the relative financial position of each party.  The facts

related thereto will determine the appropriate adjudication of property distribution and

spousal support.  This precisely is the situation here presented.  Save for the crucial facts

relating to the official income and benefits Plaintiff receives from her diplomatic mission,

no other aspect of the parties' respective financial situations has yet been brought into dispute. However, without the legally essential evidence of Plaintiff's official compensation, the Defendant in Superior Court is, in essence, defenseless.

(5)     The above two sets of facts and circumstances intersect in this special case. As a "member of a foreign diplomatic mission", all of Plaintiff's personnel records — to include those pertaining to income and benefits — are regarded as "archives of the [diplomatic] mission", and are hence "inviolable", pursuant to the VCDR treaty. The shield of diplomatic inviolability, *inter alia*, prohibits their introduction or disclosure in a domestic judicial proceeding. The shield of inviolability may be pierced solely with the express waiver and consent of the diplomatic mission of which Plaintiff is a member.

(6)     The fact that Plaintiff herself possesses few if any "personal" diplomatic immunities is, here, immaterial. Under the VCDR treaty, it is exclusively the diplomatic mission — not the individual diplomatic employee — that may be legally said to "own" the immunity/inviolability of these essential records. The Plaintiff, herself, may not volunteer to introduce or disclose these records in a judicial proceeding, absent formal waiver from her diplomatic mission. Further, absent such waiver, no trial court may accept such inviolable documents and information into the record, or grant it any weight in the adjudication, without violating a solemn treaty obligation of the United States, one which is of vital import to the ability of this nation to conduct diplomatic relations around the globe.

(7)     At the same time, however, lacking the ability to adduce and weigh

evidence relating to a divorce plaintiff's salary and benefits, no trial court may proceed to

adjudicate the financial disputes in the divorce. This conclusion would be especially

compelling where, as here, the Plaintiff's total compensation is both (a) substantial and

tax-exempt, and for this reason, (b) substantially greater than the Defendant's own, as a

67-year old federal retiree. For a trial court to adjudicate the financial disputes in a

divorce notwithstanding the lack of such crucial evidence would impermissibly infringe

Defendant's Fifth and Fourteenth Amendment entitlements to due process.

(8)     Defendant, in good faith, believes that the special facts and circumstances

cited above demonstrate convincingly the existence here of two significant, non-frivolous

Federal questions:  the interpretation of the diplomatic inviolability protections arising

from the VCDR treaty; and the impact these treaty protections may have upon

Defendant's ability to receive a Constitutionally fair divorce trial. Accordingly,

Defendant believes, this District Court enjoys clear, original jurisdiction over the

determination of the two Federal questions at the heart of the underlying divorce action.

28 USC §1331.

## **Timing and Timeliness**

(13)     Defendant/Removant believes it likely that Plaintiff/Respondent will

contest this Removal action by asserting it to be untimely, coming on the eve of trial in

Superior Court. Anticipating such arguments, Defendant/Removant says as follows.

(14)   **Sufficiency of Prior Notice**:  First, the present Removal action can come as a surprise neither to the Plaintiff/Respondent nor the Superior Court.  From the filing of his very first pleading in Superior Court (Defendant's Answer to Complaint for Divorce and Equitable Distribution of Property, February 7, 2014, Exhibit D, attached), the Defendant/Removant has repeatedly, consistently, and vigorously raised the jurisdictional problems created by the two Federal questions cited above:  the legal inviolabilty of diplomatic "archives", pursuant to international treaty law; and the impacts that this form of diplomatic immunity would unavoidably impose on his ability to be accorded due process in a divorce proceeding initiated by his diplomat-spouse.  He likewise reserved the right to file a removal action, in light of these potential Federal questions.  See Defendant's Answer to Complaint, id., *passim;* copy attached to this Removal Notice.

(15)   More than this, the Defendant/Respondent availed himself of the right accorded by the Superior Court's own rules to raise the defense of lack of jurisdiction by way of answer, in lieu of a separate motion to dismiss.  (Superior Court Rules for Domestic Relations Proceedings, S.C.R. Dom.Rel. Rules 12(b)(1) and (2).  The provision is identical to that contained in the Federal Rules, at FRCP Rule 12.)  On the basis of reasoning not conveyed to Defendant/Removant, either by opposing counsel or the Superior Court, it was argued and ordered (verbally) that — notwithstanding his having adequately raised the defense in his Answer — the Defendant/Removant nevertheless should present it a second time, through a separateMotion to Dismiss for Lack of Jurisdiction.  So as to avoid further complicating an already sufficiently complicated

case, Defendant/Removant complied, and he submitted the appropriate Motion to

Dismiss this past May 21. Plaintiff's Opposition was filed just this past Wednesday, June

3. (The respective Motion, Plaintiff's Opposition, and supporting Memoranda of Points

and Authorities are attached hereto.)

(16)   In the event that all the foregoing may still be seen as insufficient notice,

the Defendant/Removant again raised the jurisdictional defense in his submission to the

Joint Pre-Trial Statement, conveyed to both opposing counsel and the Court. Indeed,

Defendant/Removant went so far there as to state: "Given the legal essentiality of

jurisdiction, and the unconditional requirement that a court dismiss for lack of it, the Court

clearly had the authority to dismiss the action *sua sponte*. Dismissals of this nature are not all

that rare."

(16)   Defendant/Removant further represents that he raised these same issues and

potential for removal, pointedly, at every status hearing held in this matter, in open court.

He also raised them directly with Plaintiff/Respondent's counsel, both in conversation

and written communications.

(17)   In short, there are no reasonable grounds present for asserting the instant

Notice of Removal represents some sort of legal "sneak attack".

(18)   **Ripeness, Judicial Economy, and Exhaustion of remedies:** These three

related considerations constitute a more than ample justification for waiting until now to

file this Removal Notice. First, not until the last several days did it become inescapably

clear that the the existence of Federal questions was directly being challenged by

Plaintiff/Respondent.  For example, in her Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction, filed only two days ago, Plaintiff's counsel argued, only for the first time, that her client's diplomatic personnel and compensation records did not constitute "archives of the [diplomatic] mission", under the provisions of the VCDR treaty.  Clearly, the judicial determination of whether the subject international treaty does, or does not treat such records as diplomatic archives, and hence as legally inviolable, is preeminently a Federal question, arising out of a treaty.  This alone would confer grounds for removal to the District Court, under 28 USC §1331.  Until Plaintiff put treaty construction squarely at issue, it remained a speculative contingency, and hence not ripe for adjudication.

(19)    Second, Defendant/Removant perceived an affirmative obligation to exhaust remedies, before placing the Federal questions before the District Court.  This obligation stemmed both out of respect for judicial economy, and an interest in minimizing the litigation burden for both parties.  He deemed himself justified in withholding the use of Removal until no reasonable alternative option.  Until such time, the Defendant/Removant perceived good and sufficient grounds for allowing Removal to be held in abeyance, while at the same time giving repeated and unambiguous notice that use of the Removal vehicle was potentially justified.

(20)    In addition to the numerous jurisdictional arguments presented to the Superior Court, Defendant/Removant also exhausted another crucial remedy — the good-faith effort to achieve a fair, reasonable, and amicable resolution.  Clearly, such a

resolution would have rendered entirely moot any issues of treaty law, due process, or the potential grounds for removal. Regrettably, despite Defendant's numerous offers of compromise and efforts at amicable resolution, Plaintiff has from the outset failed and refused to make the slightest concession or compromise of any sort. She has not deigned to make any counter-offer to those the Defendant/Removant has put forward. The financial/property demands she maintains today do not in any respect deviate from those she originally set forth in her Complaint for Divorce.

(22)    In brief, throughout the Superior Court proceeding to date, the Plaintiff has failed to negotiate in good faith. This failure, and the ample notice she has had, fully justify Defendant/Removant's continued good-faith belief that no party here can reasonably claim to have been prejudiced by his decision to exhaust his remedies prior to Removal.

### Conclusion

(21)    The two federal questions presented above intersect here in a manner that produces a rare, if not altogether unique case of first impression: a domestic relations action into which there intrude significant questions of both international treaty law and Constitutional due process — to include the possibility that these two bodies of law may directly and inescapably conflict here.

(22)    The Defendant/Removant argues that, indeed, the two bodies of law do unavoidably conflict in this action. He argues further that the inescapable outcome of this conflict of laws is to render it impossible for the Superior Court to adjudicate the

financial issues in this divorce, without infringing impermissibly on Defendant/
Removant's Fifth and Fourteenth Amendments entitlements to due process.

(23)   The fatal conflict of laws here is something the Defendant/Removant very
much regrets.  It is clear that, beyond any conflict between the laws governing diplomatic
relations and Constitutional due process, there also likely exists here an additional
conflict — that between the respective party's due process entitlements themselves.
Notwithstanding her status in the U.S. as a temporary non-resident, and as a foreign
diplomatic staff member, Plaintiff/Respondent incontestably *does* enjoy most of the same
due process guarantees enjoyed by U.S. citizens, such as Defendant/Removant.  He
remains acutely sensitive to this fact.

(24)   At the same time, Defendant/Removant knows that U.S. District Courts are
often called upon to weigh and balance the conflicting Constitutional entitlements of two
litigants.  He believes that the present case will again require such judicial balancing.
The crucial consideration, he argues, is this.  Whatever due process may be actually be
"due" to a diplomatic plaintiff/spouse in a divorce, those rights cannot be seen as taking
precedence over those enjoyed by a U.S. citizen defendant/spouse.  It unfortunately
appears unavoidable that, in the balancing of interests, one or the other party's interests
will come up short.

(25)   It must be stressed, however, that the diplomatic plaintiff/spouse is not
bereft of recourse, in the event that the defendant/spouse's arguments in this Removal
action prevail.  For example, none of the arguments advanced here would in any way

deprive the D.C. Superior Court of the jurisdiction required to issue the parties a decree of divorce, so long as adjudication of the financial/property issues are not adjudicated. The attached Memorandum of Points and Authorities elaborates the alternatives available to Plaintiff/Respondent. (Memorandum at pp ___.)

(26)    In sum, it is doubtless that the Federal questions set forth above do, coupled with her persistent unwillingness to compromise, essentially create for Plaintiff a genuine legal jail-house. However, it is Plaintiff who imprisoned herself therein. The Defendant/ Removant in no way contributed. Consequently, of this case it may truly said that Plaintiff/Respondent holds in her own hands the keys to unlock the jail-house door.

## **Memorandum of Points and Authorities**

(27)    The Defendant/Respondent has already furnished ample points, authorities, and elaboration in the Memorandum he submitted in support of his Superior Court Motion to Dismiss for Lack of Jurisdiction, filed May 21, 2015. A copy is attached as Exhibit A. Accordingly, and in the interests of judicial economy and burden to parties, he will forebear from submitting a separate supporting Memorandum for this Court. Rather, Defendant/Removant adopts, ratifies, and incorporates by reference here all the arguments of law and fact contained in his referenced Memorandum.

## **Relief Requested**

(27)    For the reasons set forth above, the Defendant/Removant, RONALD MLOTEK, respectfully requests this honorable Court to:

(a)    Accept jurisdiction over this matter, to the limited extent necessary to adjudicate the two Federal questions cited: U.S. treaty obligations under the VCDR; and the due process impacts those treaty obligations may have upon this action for divorce;

(b)    Determine and order that, in the interests of complying with both U.S. treaty obligations and due process guarantees, the D.C. Superior Court lacks jurisdiction to adjudicate the contested financial issues in the pending divorce;

(c)    If appropriate and necessary, issue a writ of prohibition to the D.C. Superior Court, instructing that no adjudication or trial in this matter be had until such time as this U.S. District Court determines whether, and to what extent, the divorce action may continue in Superior Court;and

(d)    After due consideration of the legal and factual arguments presented, remand to the Superior Court those remaining disputes in the divorce action, the adjudication of which will neither violate diplomatic immunity/inviolability nor unreasonably infringe Defendant's due process rights.

(28)    In order to reflect the possibility of a writ of prohibition here, Defendant/ Removant here will attach two versions of the Draft Order he proposes to the Court — one with and one without reference to a writ of prohibition.

WHEREFORE, the Defendant/Removant, RONALD MLOTEK, respectfully prays that this honorable Court grant the relief requested.

RESPECTFULLY SUBMITTED:

RONALD S. MLOTEK,
8149 East Beach Drive, NW
Washington DC 20012
(202) 246-7614 (mobile)
ron.mlotek@yahoo.com
*Defendant/Removant, pro se*
June, 5, 2015

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, under penalty of perjury, that on the ____th day of
June, 2015, I served a copy of the foregoing Notice of Removal upon counsel for the
Plaintiff/Respondent, via the DC Superior Court's e-filing service and also by standard
email, upon:

Katherine A. ORourke #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400 Washington, DC 20036
Phone: (202) 466-8960 Fax: 202-293-8103
korourkesofeldesmantucker.com
*Counsel for Plaintiff/Respondent*

I further certify that I also served a copy of said Notice, on the same date, and by
similar means.

*Attachments were omitted from service copies, copies.  These documents are
already part of the record in Superior Court, and in the possession of both opposing
counsel and the D.C. Court.

SIGNED:

RONALD S. MLOTEK
8149 East Beach Drive, NW
Washington DC 20012
(202) 246-7614 (mobile)
ron.mlotek@yahoo.com
*Defendant/Removant, pro se*

## ATTACHMENTS

Exhibit A:   Defendant's Motion to Dismiss of Lack of Jurisdiction, and accompanying Memorandum of Points and Authorities, filed in D.C. Superior Court, May 21, 2015;

Exhibit B:   Plaintiff's Opposition to Motion to Dismiss, and supporting Memorandum, filed in D.C. Superior Court, June 3, 2015;

Exhibit C:   Plaintiff's original Complaint for Divorce and Equitable Distribution of Property, filed in D.C. Superior Court, and served upon Defendant, January 15, 2014

Exhibit D:   Defendant's original Answer to Complaint for Divorce and Equitable Distribution of Property, filed in D.C. Superior Court, February 7, 2014