Exhibit A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## FAMILY COURT
### Domestic Relations Branch

**Karin PEETERS**
  c/o Katherine A. O'Rourke, Attorney
  Feldesman, Tucker, Leifer, Fidell LLP
  1129 20th Street, NW, 4th Floor,
  Washington, DC 20036
        *Plaintiff*
  v.

**Ronald Sol MLOTEK**
  8149 East Beach Drive, NW
  Washington, DC 20012
  202.722.4375
  ron.mlotek@yahoo.com
        *Defendant, Pro Se*

Case No. **2013 DRB 004222**
Robert J. Rigsby, Judge
**Trial dates June 10 & 11,
2015**

## DEFENDANT'S MOTION TO DISMISS
## FOR
## LACK OF JURISIDICTION

1.    The DEFENDANT, Ronald MLOTEK, very respectfully hereby

moves the Court to dismiss this action for want of jurisdiction over the subject

matter — and in specific, the subject of "equitable distribution of property".

2.    Defendant argues that, under the unique facts and circumstances of

this specific case, the Court is totally without jurisdiction over a foremost issue in

most divorce actions:  the respective income and benefits of each party.

3.      Specifically, Plaintiff here is the member of a foreign diplomatic mission accredited to the United States, the Delegation of the European Commission to the U.S.  As such, the U.S. grants her permission to reside here, temporarily, on a non-immigrant "diplomatic visa" (Visa type A-2).  The U.S. government treats Plaintiff's employer as a "diplomatic mission" under governing international treaty and customary law.  In particular, the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 ("VCDR").

4.      As a result, Plaintiff is employed and compensated by an entity to which the United States bears a vital, multilateral treaty obligation to recognize and defend the privileges, immunities, and inviolabilities conferred upon Plaintiff's employer under both international and domestic law.  Consequently, any and all evidence here relating to Plaintiff's personnel and compensation records lies entirely beyond the power of this, or any American court to compel — or even to admit into evidence, regardless of whether its nature is documentary or testimonial.

5.      Any effort by a domestic court, either to compel or admit evidence in any way pertaining crucial compensation facts would cause the United States to be in breach of a vital, multilateral treaty obligation, to wit:  the Vienna Convention on Diplomatic Relations.  *Inter alia*, this treaty enshrines a key legal principle of diplomatic relations: the "inviolability of the archives" of a diplomatic mission.  Plaintiff's personnel and salary information clearly constitute "archives

of a mission, namely the embassy representing the European Community to the U.S. There exists no exception or legal theory under which the inviolability of such information might be overcome — apart from express waiver on the part of Plaintiff's diplomatic mission, conveyed to the U.S. Department of State via diplomatic note.

6.      Defendant further argues that depriving him of the ability to present or cite any evidence relating to Plaintiff's income and benefits deprives him entirely of the ability to defend his interests in a divorce action, where the only disputed material issue concerns "equitable distribution of property", specifically the marital residence. When Defendant's evidentiary obstacle is coupled with the Court's own lack of judicial authority over the only contested factual issue, it must be concluded that any attempt here to adjudicate property distribution would eviscerate Defendant's entitlement to fundamentally fair judicial process, under the Fifth and Fourteenth amendments to the Constitution.

6.      Last, Defendant argues that, regardless of what if any protections international law accords to Plaintiff's employment and compensation records, such evidence would still be inadmissible under the Federal rules of evidence, absent full cooperation, and indeed participation (authenticating documents) of Plaintiff's diplomatic employer. The hearsay rules would bar Plaintiff herself from testifying as to the compensation she receives from her diplomatic employer. If

she sought to introduce a document on the subject, that too would be barred under the "best evidence" and authentication rules.

6.      The two foregoing arguments. and several subsidiary ones, are elaborated and supported in the accompanying Memorandum of Points and Authorities.

7.      Defendant also calls attention to the fact that he timely and properly raised the above defense of lack of jurisdiction as early as in his original Answer to the Complaint, as well as in several subsequent hearings before the Court.

## CONCLUSION

8.      In the final analysis, "subject matter jurisdiction" is merely a legal synonym for a court's power to fairly adjudicate a given dispute.  Where a court lacks the basic judicial power essential to deliver fundamental procedural due process to a litigant, the court must be said to lack jurisdiction over the dispute. Such precisely is here the case, at least as regards equitable distribution of property, which is the only issue in the divorce.  International treaty obligations legally bar any governmental authority in the U.S. from breaching the inviolability of Plaintiff's salary/benefits data.  When such vital evidence is entirely barred in a divorce matter, a court may proceed only at the cost of denying fundamental due process to one party.  Such circumstances would, in essence, rob the Court of the power to adjudicate, and hence subject-matter jurisdiction.

**WHEREFORE**, the Defendant respectfully moves this Court to dismiss this action for lack of jurisdiction.

RESPECTFULLY SUBMITTED:

Ronald Sol Mlotek
8149 East Beach Drive, NW
Washington, DC 20012
ron.mlotek@yahoo.com
Defendant, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th of May 2915, a copy of the foregoing Defendant's Opposition to Plaintiff's Motion to Compel Discovery and for Other Relief was served, via the Superior Court's e-filing service and by standard email, upon:

Katherine A. ORourke #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400 Washington, DC 20036
Phone: (202) 466-8960 Fax: 202-293-8103
korourkesofeldesmantucker.com
*Counsel for Plaintiff*

SIGNED:
Ronald Sol Mlotck
8149 East Beach Drive, NW
Washington, DC 20012
ron.mlotek@yahoo.com
Defendant. *pro se*

ATTACHMENTS:

    (A)    Proposed Order;

    (B)    Memorandum of Points and Authorities

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**FAMILY COURT**
**Domestic Relations Branch**

---

**Karin PEETERS**
  c/o Katherine A. O'Rourke, Attorney
  Feldesman, Tucker, Leifer, Fidell LLP
  1129 20th Street, NW, 4th Floor,
  Washington, DC 20036
        *Plaintiff*

    v.

**Ronald Sol MLOTEK**
  8149 East Beach Drive, NW
  Washington, DC 20012
  202.722.4375
  ron.mlotek@yahoo.com
       *Defendant, Pro Se*

Case No. **2013 DRB 004222**
Robert J. Rigsby, Judge
**Trial dates June 10 & 11, 2015**

---

## ORDER

Upon consideration of all the facts and legal arguments presented, it is hereby ORDERED that this matter be dismissed for lack of subject matter jursdiction.

SIGNED:

_____

Robert J. RIGSBY, Judge

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
FAMILY COURT
Domestic Relations Branch**

---

**Karin PEETERS**
  c/o Katherine A. O'Rourke, Attorney
  Feldesman, Tucker, Leifer, Fidell LLP
  1129 20th Street, NW, 4th Floor,
  Washington, DC 20036
            *Plaintiff*
      v.

Case No. **2013 DRB 004222**
Robert J. Rigsby, Judge

**Ronald Sol MLOTEK**
  8149 East Beach Drive, NW
  Washington, DC 20012
  202.722.4375
  ron.mlotek@yahoo.com
            *Defendant, Pro Se*

---

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
FOR
LACK OF JURISIDICTION**

---

The DEFENDANT, Ronald MLOTEK, respectfully hereby submits the

following in support of his attached Motion to Dismiss.

**QUESTIONS PRESENTED**

(1)    Whether the Court would not be violating key United States

international treaty obligations governing diplomatic inviolability and immunity,

in the event the Court sought to compel, admit, or weigh evidence relating to

1.

Plaintiff's salary and benefits receives from her diplomatic mission employer, absent her mission's written waiver via diplomatic channels.

(2)     Whether the Rules of Evidence governing hearsay and authentication would not bar Plaintiff from introducing compensation evidence obtained in any manner other than through her employer's waiver of diplomatic immunity/inviolability.

(3)     Whether the Court would not impermissibly infringe Defendant's Fifth and Fourteenth amendment due process entitlements, in the event it proceeded to adjudicate an "equitable distribution of property", notwithstanding the complete unavailability of evidence on the only disputed issue of fact presented: the amount and character of Plaintiff's salary and benefits.

(4)     Whether the combined impact of these three obstacles — U.S. treaty obligations, the unavailability of admissible evidence concerning Plaintiff's compensation, and the Court's resulting inability to insure fundamental due process to Defendant — does not effectively deprive the Court of the subject-matter jurisdiction minimally necessary to adjudicate the "equitable distribution of property", in this factually unique case.

## SUMMARY OF THE ARGUMENT

1.     All information contained in Plaintiff's compensation and benefits records must legally be regarded as "archives of a diplomatic mission". Such information, therefore, is protected as "inviolable" under international

treaty and customary law, . This diplomatically-protected status bars the Court from compelling production of evidence that originates from, or is contained in Plaintiff's compensation records, as well as from receiving such information into evidence or according it any legal weight.

2.      Plaintiff herself may not legally "waive" the shield of diplomatic inviolability that cloaks information relating to her compensation and benefits. Legally, only her diplomatic employer may do so. Apart from formal waiver, no exception or other legal solution can surmount the barrier of the diplomatic immunity/inviolability that shields all the compensation evidence so vitally necessary to the Defendant's case.

3.      Even in the event that the Court were on some grounds to find that the compensation evidence is *not* diplomatically protected under international law, such evidence would still be inadmissible under the Rules of Evidence pertaining to hearsay, "best evidence" and the authentication of documents.

4.      Defendant's due process entitlements here cannot reasonably be met if, in a divorce action, the Court proceeded to adjudicate "equitable distribution of property", while the Defendant remained wholly incapable of adducing any admissible evidence pertaining to Plaintiff's substantial, tax-exempt compensation. Plaintiff's compensation goes to the essence of Defendant's case; he is fundamentally defenseless without such evidence.

4.      As a diplomatic mission, Plaintiff's employer is legally entitled to the immunities and inviolabilities conferred by international law — the VCDR, and customary state practice.

5.      Among these entitlements is the absolute inviolability of the "archives of the mission".  VCDR, Articles 24 and 45.

6.      Pursuant to these VCDR provisions, and customary state practice, employee personnel records and information — including those relating to compensation — must be regarded as "archives of the mission", and perforce inviolable, immune, and otherwise beyond the reach of judicial and other entities of government within the U.S.

## INTRODUCTORY NOTE

The law of diplomatic relations is not well understood by most attorneys and courts.  To facilitate understanding of an unfamiliar and complex body of law, it would be appropriate for Defendant first to specify the arguments he is *not* making, before turning to those that he is.

To clarify the arguments he does not advance, Defendant stipulates that:

1.      Plaintiff enjoys no form of "personal diplomatic immunity" that would impede the Court's full and fair adjudication of this matter on the merits.  Instead, the specific diplomatic immunities Defendant cites are all legally "owned" by her embassy employer, and its home organization/ government.

5.

2.      Merely because her legal status here is as a non-resident alien and member of a foreign diplomatic mission, does not disqualify Plaintiff from receiving nearly all the due process protections enjoyed by U.S. citizens and Permanent Resident Aliens ("Green-card holders.) Rather, the exception for which Defendant argues is highly limited and fact-specific to the instant case.

3.      Plaintiff should not be denied access to any reasonable, alternative means of recourse. Defendant will cite below a number of alternate avenues of recourse open to Plaintiff, in the event Defendant's present motion prevails.

## ARGUMENT

Following are the legal arguments that Defendant *is* making.

**1.      International treaty, the VCDR, bars the Court from seeking or considering any evidence relating to Plaintiff's job compensation. All such information and records are legally shielded as "archives of a diplomatic mission".**

It must be well understood at the outset that Plaintiff's employer cannot be thought of as an "ordinary employer" in virtually every other divorce case. Rather, it must be regarded as belonging to a very rarer breed of employer, enjoying legal status and protection accorded to almost no other employer in the private or public sectors. It is this fact that makes this litigation unusually complex and *sui generis*.

Specifically, Plaintiff is employed by a foreign diplomatic mission, the European Commission Delegation, holding non-resident immigration and visa status. As such, she must legally be considered a "member of the mission", under the governing international treaty: the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 (the "Vienna Convention" or "VCDR"), in specific Article 1 (b) and (c). U.S. statute specifically confers upon Plaintiff's employer diplomatic status within this country. 22 U.S. Code § 288h.

As a foreign diplomatic mission, and pursuant to the VCDR, the United States bears certain key treaty obligations toward Plaintiff's employer. Among these is ensuring recognition and protection of the Delegation's immunities and inviolabilities. Most crucially for this case, these protections include the inviolability of the Delegations "archives". VCDR, Articles 24 and 45.

There would appear to be little, if any grounds for arguing that records and information relating to employee salary, benefits, pension records, and the like would fail somehow to qualify as "archives of the mission", entitled to inviolability under the VCDR. *See, e.g. Amicus* brief filed by the U.S. Department of Justice (on behalf of the State Department) with the Federal Second Circuit, in *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of the Lao People's the Democratic Republic*, 2d Cir. 2014, Appeal Nos. 13-495-cv(L); 13-545-cv(CON), accessible at http://www.state.gov/documents/organization/226366.pdf.

7.

Plaintiff was unable to as yet locate any published opinion in the appeal; presumably it remains pending.  Nevertheless, the United States'*Amicus* brief in *Thai Lao Lignite* is entirely in accord with, and supportive of Defendant's arguments regarding the inviolability of documents or information relating to salary and benefits of diplomatic mission employees.  Furthermore, it contains a provides an excellent overview of the compelling case law, statutes, treaties, and other authorities regarding diplomatic immunity and inviolability, most of which Defendant relies upon here.

The a*micus* brief also provides instructive discussion of the background of diplomatic immunity and inviolability — notably including the serious harms that would be caused to the conduct of U.S. foreign policy and diplomatic relations, in the event a court should rule that certain documents or testimony regarding embassy operations were not protected by these important legal shields.
*Id.*, at pp. 23-29.

The *amicus* brief was filed to advocate reversal of the Federal trial court (Kimba Wood, J.) in *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of the Lao People's the Democratic Republic*, memorandum opinion, 2013 U.S. Dist. LEXIS 18280 (S.D.N.Y. Feb. 11, 2013).  The trial court had ruled that certain documents and testimony in the hands of a foreign diplomatic mission did not qualify as "archives of the mission", and were thus not protected as inviolable and

immune, and could in fact be obtained through discovery. The *amicus* brief takes
strong exception to this view.

Based on the reasoning of the government's *amicus* brief in *Thai Lao
Lignite,* and in the many compelling authorities cited therein, there can be no
reasonable doubt that — if the U .S. State Department and/or Delegation of the
European Commission were aware of the diplomatic archives dispute currently
before this Court — they would almost certainly intervene to oppose any decision
by the Court to compel, or to allow introduction of, evidence contained in the
Delegation's records of employee salaries and benefits. Both the U.S.
government, and the diplomatic missions of all major foreign governments
(including Plaintiff's employer) would clearly deem *any* employee personnel
records and information to constitute "archives of the mission", and this almost
certainly would include pay and benefits information.

The foregoing view is supported by the long-standing, uniform practice of
the United States (i.e.,.Departments of State and Justice) to intervene in federal
and state judicial or administrative proceedings, whenever infringements of
diplomatic immunities have occurred, or are likely to. Traditionally, such
interventions are made through filing a "Statement of Interest" on behalf of the
United States in the appropriate trial court. *See e.g.*, United States statements of
interest in the trial court cases of *Mukaddam v. Permanent Mission of Saudi
Arabia to the United Nations,* 111 F. Supp. 2d 457 (SDNY, 2000); *Begum v. Saleh,*

SDNY 2000, Docket No. 99-cv-11834, U.S. Statement of Interest filed 04/04/2000
and accessible at http://www.state.gov/documents/organization/6655.doc.

In other cases, where the federal Statement of Interest has failed to prevail
at trial, or the government was unaware of the trial in the first instance, the U.S.
will intervene as *amicus* on appeal, urging reversal of a trial court's decision that
infringes diplomatic privileges or immunities.  *See, e.g.*, *Thai Lao Lignite, supra;*
and *Sage Realty Corporation v. Mission of Zaire to the United Nations,* 988 F.2d
295 (2d Cir., 2003) *reversing* trial court's denial of inviolability at 787 F.Supp. 389
(SDNY, 1992).

Moreover, U.S. courts generally acknowledge the grave importance of
Vienna Convention immunities, in terms both of U.S. adherence to international
law, as well as of raising reciprocity concerns about the treatment of U.S.
diplomatic missions, property, and personnel abroad.  Accordingly they will often
forbid discovery that could violate the immunity and inviolability of mission
archives. See, e.g., *Taiwan v. U.S. District Court for the Northern District of
California*, 128 F.3d 712 (9th Cir. 1997), which goes so far as granting a rare writ
of mandamus to the trial court, instructing it not to compel a foreign mission
employee to testify at a deposition on matters which qualify for treatment as
"archives of the mission".

Finally, the High Court of the United Kingdom has held, in a publicized
case, that it would breach the VCDR's inviolability protections for a court to even

10.

receive into evidence information that was once contained in diplomatic archives, even after the archive information had been leaked to the public. (In that case, the leak was part of the larger Julian Assange "WikiLeaks" disclosures. The documents in question were somehow obtained from the U.S. Embassy in London.) *Bancoult, on Application to the Queen, against the Secretary of State for Foreign and Commonwealth Affairs,* [2013] EWHC 1502 (Admin), (i.e., "High Court of Justice for England and Wales, Administrative Court",) accessible at http://www.bailii.org/ew/cases/EWHC/Admin/2013/1502.html.

Beyond from its connection to "WikiLeaks" and the ensuing UK media furor, *Bancoult* is noteworthy for its extensive presentation and analysis of the doctrine of inviolability diplomatic archives, its history, and its vital policy importance to the conduct of diplomatic relations. *See especially Bancoult* at paras. 37-50. In addition, the High Court devoted special focus on the legal irrelevance of how exactly the information was obtained, and in whose hands (or minds) it now was. *Id.*, at paras. 39 and following.

Specifically, the High Court reversed the lower court's decision to admit the Wikileaks evidence, on the grounds that "inviolability of archives" could no longer be said to exist, when the documents and information had come into the hands of hundreds, if not thousands of members of the British public, either in the press or on the Web. In rejecting the lower court's reasoning, the High Court relied heavily on the language of VCDR Art. 24, which stipulates that diplomatic archives are

11.

inviolable *"wherever they may be." Id.,* at paras. 39 and following (empahsis

supplied.)

In other words, a major UK appellate court held in *Bencault* that

introducing evidence from diplomatic archives into a judicial proceeding was

wholly distinguishable from, and legally unrelated to the fact that the archive

information had already been widely leaked, and came as no surprise to the lower

court or anyone else. Evidence introduced into judicial proceedings, the High

Court effectively declared, is fundamentally different from publishing the same

information in the media. The purpose of inviolability, the court stated, is to

protect the archives from actions by the government that hosts the diplomatic

mission, not from the press. Clearly, "government" includes the courts. *Bencault*

at paras. 40-41.

Defendant readily concedes that a decision of a UK court has no controlling effect over

the District's Superior Court. However, by the same token, neither do the decisions of non-

District courts even within the U.S., including U.S. appellate courts — apart perhaps from the

U.S. Supreme Court. Still, courts in this country frequently look to foreign decisions, when they

are especially instructive, on-point, and originate from an allied nation with an advanced judicial

system. This especially true when it comes to courts from our own common-law "parent", the

U.K. It also is particularly compelling when the decisions concern international law, where so

many principles and doctrines originate with "customary state practice", as opposed only to

statutes, treaties, etc.

In the field of diplomatic relations law, U.K. decisions hold an added attractiveness:

British diplomatic lawyers in the Foreign Office led the drafting of the Vienna Convention, its

negotiating history, and the legal treatises discussing it. *See, e.g.*, Denza, Eileen, *Diplomatic Law*

(Oxford U. 3d ed. 2008), *passim.* Denza's treatise is widely regarded as the "bible" on the

subject, by legal scholars, the lawyers at the State Department, and by their counterparts in

foreign ministries around the world. (Defendant was honored to have been mentored by Prof.

Denza, during his trips to London and hers to Washington.)

Before proceeding to the next argument, Defendant emphasizes one additional, highly

significant point. This Court is obliged to acknowledge and comply with international law,

including the VCDR treaty. The Constitution enshrines international law as an integral

component of "the supreme law of the land". Constitution, Art. VI, para. 2. The text is worth

citing here in full:

> This Constitution, and the laws of the United States ............., and all
> treaties made, or which shall be made, under the authority of the United
> States, shall be the supreme law of the land; and *the judges in every state*
> *shall be bound thereby*, anything in the Constitution or laws of any State to
> the contrary notwithstanding.

*Id.,* emphasis supplied.

> **2.      Plaintiff herself does not "own" the immunity/inviolability of her**
> **compensation records, and hence she herself may not legally waive it in**
> **court. Under international law, waiver of immunity may be effectuated**
> **only by her mission or its parent entity.**

This principle is axiomatic in the VCDR and customary law. The VCDR's

Preamble, for example, provides that " ........ the purpose of [diplomatic]

privileges and immunities is not to benefit individuals [i.e. the mission employees

13.

5.      In balancing the conflicting due-process interests at stake, the

Court should recognize that Plaintiff does possess a variety of alternatives

for pursuing legal recourse.  The Court likewise should note the fact that

Plaintiff's decision to enter a diplomatic career was freely made, and was

well-informed as to both the upsides and downsides of such a career choice.

## FACTS AND LAW NOT IN DISPUTE

The following facts and legal conclusions represent the foundation for the

arguments that proceed it.  All of these facts and conclusions are either not

disputed, or not subject to reasonable dispute.

1.      Pursuant to U.S. law, Plaintiff is a full-time employee of a foreign

diplomatic mission (i.e. an "embassy"), specifically the Delegation of the

European Commission to the U.S.  22 U.S. Code § 288h.

2.      Accordingly, she is legally a "member of a diplomatic mission",

pursuant to international treaty law, most specifically the Vienna

Convention on Diplomatic Relations, 23 U.S.T. 3227 (the "Vienna

Convention" or "VCDR"), at Articles 1 (b) and (c).

3.      Plaintiff holds a "diplomatic" (A-2) visa, entitling her to remain in

the U.S. only for so long as she remains employed by her embassy.  (She

may move to a different embassy, if first approved by both the Departments

of State and Homeland Security.)  She is, accordingly, documented as a

"non-resident alien" under immigration law.

themselves| but to ensure the efficient performance of the functions of diplomatic missions as representing States[.]" This principle is elaborated in customary state practice. See, e.g., Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities ("*Guidance*"),Dept. of State Publication 10524, rev. 2011, accessible at  http://www.state.gov/documents/organization/ 150546.pdf, at pp. 5-6, 12, and 15. (Defendant participated in the drafting of this publication at the State Dept.)

Accordingly, for example, Plaintiff here may not, on her own initiative, introduce into evidence her pay and benefits statements, which Defendant suspectsPlaintiff's Counsel intends to do. It is of no legal relevance that these documents happen physically to be in Plaintiff's hands, or that Plaintiff has a personal interest in them. These documents, and the information contained therein, are "owned" by the European Commission Delegation, and the EC in Brussels, as "diplomatic archives". They are inviolable "*wherever they may be*," even if this happens to be in the hands of Plaintiff herself or Counsel,  VCDR, Art. 24.

Further, an attempt by Plaintiff to introduce these documents into evidence would not in any way create a *fait accompli* that had the effect of waiving inviolability by implication. Waiver of immunity/inviolability must always be express. VCDR, Art. 32, *Guidance for Law Enforcement*, *id*., and Department of State Circular Diplomatic Note,

14.

sent to all foreign missions in Washington, dated 15 November 1989, and referenced in the Foreign Affairs Manual (The State Dept.'s internal regulations) at 2 FAM 233.4.

In sum, the evidentiary barriers cited above can neither waived or controlled by any action on Plaintiff's part, or even by the Department of State itself. The State Department does not "confer" diplomatic immunities/ inviolability on foreign missions, their property, documents, communications or personnel. Rather, the Department merely "recognizes" that the relevant immunity attaches, by operation of international law. The the many State Department documents addressing immunity never speaks in terms of "conferring" or "granting" immunity or inviolability. *See, e.g.* Guidance for Law enforcement, *passim*.

The only alternative as regards waiver would be for Plaintiff herself to request her Delegation to waive inviolability of her compensation records, via diplomatic communication to the State Department, which will in turn officially notify the appropriate domestic judicial and law enforcement authorities. This option is clearly open to Plaintiff, Defendant's pleadings have made this option known to her, but as yet she has not availed herself thereof.

**3.    Regardless of how the Court might rule on the application of international law, the Rules of Evidence would, independently, preclude the admission of her compensation data, absent her Delegation's affirmative cooperation and participation.**

Waiver of inviolability is not the only legal prerequisite to the admission of Plaintiff's compensation records. Even if it does waive, Plaintiff's Delegation would need also to cooperate with and participates in the evidence procedures here —e.g., by authenticating documents and information. Absent such participation, the Rules of Evidence would clearly bar the introduction and admission of such evidence.

In this regard, the applicable rules would be the Federal Rules of Evidence ("FRE"), which District of Columbia courts generally follow. *Goon v. Gee Kung Tong, Inc.*, 544 A2d 277, DC Court of Appeals (1988), at fn 9. In specific, the FRE bars hearsay evidence (Art. VIII), and adopts the "best evidence rule", requiring authentication of documents (Arts. IX and X.)

Accordingly, if Plaintiff sought to testify of her own knowledge as to the facts relating to her compensation, such testimony would be precluded as hearsay. In this case, Plaintiff would purport to be testifying about what certain documents state, rather than adducing the documents themselves. This would constitute a statement made by an out-of-court declarant (i.e. the document itself), that was offered to prove the truth of the information her compensation documents contain. FRE Rule 801(c). This would constitute a textbook instance of hearsay, and the Rules provide no exception.

By the same token, if Plaintiff did seek to introduce the documents themselves (even under a waiver of inviolability by her Delegation), the Delegation would still need to be willing to cooperate in authenticating them, under FRE Art. IX. This would require some affirmative act by her Delegation, such as having a custodian of record appear to testify that the documents were what they purported. In the event the custodian enjoyed personal diplomatic immunity from jurisdiction (which Plaintiff does not), the Delegation would likewise be required to waive that as well.

In sum, there would appear to be no easy shortcut available to Plaintiff for introducing her compensation evidence into the record, even in theory. In reality, Defendant avers, it is highly unlikely that the Delegation would waive inviolability in the first instance, let alone dispatch a diplomatic official to Court, whose own immunity from testifying would likewise need to waived.

This point further underpins Defendant's argument that the Court lacks the ability to adjudicate the "equitable distribution of property" in this case — in other words, that it lacks jurisdiction over the central most subject matter involved.

**4.      Proceeding to adjudicate this dispute, despite the foregoing barriers and limitations, would require the Court effectively to disregard Defendant's entitlement to fundamental due process.**

This conclusion does not require elaborate analysis.

17.

The Defendant is entitled to due process in having his property issue adjudicated. He cannot receive it, unless he can show the substantial size of Plaintiff's tax-free income and benefits, as contrasted with his own. International law, as demonstrated, precludes the admission of such evidence — absent formal waiver by her mission of inviolability of the records in question.

The Defendant cannot think of anything more extensive that he might offer in support of this argument. The due process issues here are uncomplicated and clear.

**5.      In balancing Plaintiff and Defendant's conflicting due process interests, the Court should take account both of Plaintiff's alternate means of recourse, and the inherent character of the career she freely elected to pursue.**

The Defendant is highly mindful of the negative appearance that his desired outcome would have, upon first consideration. Defendant is, in essence, advocating that Plaintiff, his estranged wife, must be denied access to the courts to obtain a divorce, in the manner that millions of Americans, along with many non-citizen residents, do each year. Defendant acknowledges that, even to most American attorneys, this somehow does not feel quite "right". Defendant's arguments, however, cannot adequately be assessed through initial consideration only.

First, as noted, the Defendant does not argue here that Plaintiff may denied what is a fundamental due process right, merely because she is a foreigner and/or a

foreign diplomatic employee.  To the contrary, Defendant stipulates that Plaintiff

indeed is entitled to the full range of due protections that apply to other non-

diplomatic, lawful, temporary residents of the U.S.  (This already is somewhat less

than what U.S. citizens enjoy.)

To the contrary, Defendant here is arguing for a very narrow, fact-specific

departure from ordinary, full due process.  Merely in these specific facts and

circumstances, Defendant argues, is it justified to restrict her recourse to our

courts, for at least of the relief she seeks.

Moreover, the justifications for such burdening of Plaintiff's due process

rights are ample and compelling.

To begin with, the Court should compare the extent of the due process

injury that either party will suffer, in the event her/his argument for dismissal does

not prevail.  Defendant believes he has amply demonstrated above that his own

due process injury would far exceed Plaintiff's.  This is so both in quantitative as

well as qualitative terms.

First, Defendant lacks the alternative of seeking due process in the courts of

Belgium, at least not in initiating a divorce action.  Plaintiff does enjoy that option,

which carries many benefits to her.  She is a citizen of Belgium.  Her native

language, Dutch, is the language of the judicial system in her Province.  Virtually

her entire family lives there.  She has need to return frequently.  She has a fairly

sophisticated understanding of Belgium's judicial process; several members of her own family are lawyers, one of them in fact a judge. Defendant would enjoy none of these advantages in a Belgian court.

Second, the implications of dismissing Plaintiff's case do not somehow doom Plaintiff to remain married to Defendant in perpetuity. In addition to the Belgian courts, Plaintiff may seek from this court a simple divorce decree — without the standard property distribution. It is *only* the latter issue that Defendant challenges as beyond the Court's jurisdiction. *See, e.g.*, *Fernandez v. Fernandez*, 208 Conn. 329 (Conn. S.Ct.,1988). The court there held that — although one spouse was entitled to diplomatic immunity on any property or support claims — the non-diplomat spouse could be granted a pure divorce decree. Defendant sees no reason why Plaintiff could not pursue that option here. No obstacle would be posed by diplomatic law, and Defendant would not oppose. It could be a very fast and simple solution.

Additionally Defendant may seek to negotiate in good faith with Defendant, something she has as yet failed to do. She has made no counter-proposals to the several offers Defendant has extended. She also adamantly resists any thought of compromise on the single issue that matters most to Defendant: the ability to remain in his home. Returning to mediation, or even arbitration could also be considered.

Finally, Plaintiff interests fall short of Defendant's in one very crucial respect: she freely sought the career she has pursued for some three decades within the diplomatic community. She was not uninformed that the career had both upsides and downsides. Her aunt, in fact, was employed at the Belgian Embassy for some years before Plaintiff joined her there.

Plaintiff is. or should be be aware, that she has received many significant advantages through her diplomatic career: complete exemption from all income taxes here, and she is not even required to report her embassy income. She has been permitted to live and work in the U.S. for three decades, without immigration hassles, and with complete freedom to exit and re-enter whenever she wishes. Her work is interesting, and her salary and position level are far higher than what she could expect elsewhere in this economy, or even in Belgium. She lacks a college degree, which ordinarily would put her position and salary beyond her reach.

Along with these sweet things, Defendant argues, Plaintiff must, in fairness and equity, accept the bitter as well. The dismissal of her divorce action for lack of jurisdiction would be one of these.

## CONCLUSION

Plaintiff's employment and benefits records fall entirely beyond this Court's jurisdiction. International law makes this so. Plaintiff's due process interests do as well.

21.

Further, any effort of a domestic court to compel the production of documents and other data concerning Plaintiff's earnings and benefits — or to receive into evidence the same information through other means — would result in a breach on the part of the United States of a key international legal obligation: necessity of recognizing the absolute inviolability of embassy archives, at any time, under any circumstance, and at any location. It is likely to invite intervention by the Federal government and courts. And it will undermine this country's ability to conduct diplomatic relations abroad.

For all these reasons, the court should grant the Motion to Dismiss for lack of jurisdiction.

RESPECTFULLY SUBMITTED:

Ronald Sol Mlotek
8149 East Beach Drive, NW
Washington, DC 20012
ron.mlotek@yahoo.com
Defendant, *pro se*

May 20, 2015

22.

Filed
D.C. Superior Court
06/03/2015 18:04PM
Clerk of the Court

Exhibit B

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### FAMILY COURT
#### Domestic Relations Branch

| | |
|---|---|
| **KARIN PEETERS** )<br><br>    *Plaintiff,* )<br><br>    v. )<br><br>**RONALD MLOTEK** )<br><br>    *Defendant.* ) | Case No. 2013 DRB 4222<br>Judge Robert R. Rigsby<br>Trial: June 10-11, 2015 |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Plaintiff, Karin Peeters ("Ms. Peeters"), hereby files her Opposition to the Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") filed by Defendant, Ronald Mlotek ("Mr. Mlotek"). In support of her Opposition, Ms. Peeters states as follows:

The parties to this action were married on December 3, 2000, in the District of Columbia, and separated on or about July 17, 2011. Ms. Peeters filed for divorce on December 19, 2013.

On May 21, 2015, Mr. Mlotek filed a Motion to Dismiss, arguing that (1) the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502 ("Vienna Convention"), bars the Court from seeking or considering any evidence relating to Ms. Peeters' employment compensation, and (2) any such evidence is inadmissible under the Federal Rules of Evidence. Based on these contentions, he claims that the Court would violate his right to due process if it equitably distributed the parties'

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

property.  He suggests as alternatives that the Court dismiss this action to allow Ms. Peeters to pursue a divorce in Belgium; issue a divorce decree without adjudicating property distribution; or order Ms. Peeters to return to mediation.

On June 2, 2015, the Honorable David O'Sullivan, Ambassador of the European Union to the United States, received by certified mail a subpoena issued by Mr. Mlotek, commanding him to produce documents relating to Ms. Peeters' employment and "to testify . . . under oath and penalty of perjury, . . . as Head of Mission," to authenticate the documents.  *See* Attachment A (Subpoena).  This spurious eleventh-hour subpoena represents Mr. Mlotek's first attempt to seek any discovery in this case, which is set for trial one week hence.

Mr. Mlotek's arguments are without merit and his suggested alternatives to a Court-ordered divorce and property distribution are unviable and unjust.  First, Ms. Peeters' salary, benefits, and pension information is clearly not subject to diplomatic privilege.  Second, information regarding Ms. Peeters' compensation is admissible under the Federal Rules of Evidence.  As a result, there is no colorable argument that Mr. Mlotek will suffer a due process violation if the Court equitably distributes the parties' property.  Instead, Ms. Peeters will be denied due process if the Court does not grant her a divorce and equitably distribute the parties' property—an

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202 466 8960

2

outcome that Mr. Mlotek has sought continuously to obstruct since the parties first separated almost four years ago.

## I.      State Courts Can Grant Divorces to Diplomatic Employees.

As a preliminary matter, it is well established that staff members of a diplomatic mission can obtain divorces in state court proceedings.  In *State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379 (1930), the Supreme Court determined that state court was the proper forum to adjudicate a divorce involving a vice-counsel.  More recently, other courts asked to dismiss divorce cases for reasons of diplomatic immunity have declined the invitation.  For instance, the Louisiana Court of Appeal rejected a challenge to state court jurisdiction over a domestic relations action based on one spouse's diplomatic status, *Salvatierra v. Calderon*, 2001-1888, pp. 3-5, 12 (La. App. 1 Cir. 10/2/02); 836 So. 2d 149, 153, 157, and the Virginia Circuit Court refused in a divorce proceeding to extend Vienna Convention protection to a member of an administrative staff who was neither a diplomat nor a diplomatic agent. *Abu-Hassan v. Al-Nsour*, 64 Va. Cir. 76, at *2 (2004).  And in *Fernandez v. Fernandez*, 545 A.2d 1036, 1040 (Conn. 1988), the Supreme Court of Connecticut concluded that a state court has the power to equitably distribute real property incident to a divorce proceeding under the exception to diplomatic immunity for any "real action relating to private immovable property" set forth at Article 31 of the Vienna Convention.

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

3

## II.   The Vienna Convention Does Not Apply to Ms. Peeters' Employment Compensation Information.

Mr. Mlotek does not contend that the Court lacks the authority to adjudicate this matter on the merits.  Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction ("Mem.") at pp. 5-6.  Nor could he:  Ms. Peeters is not a diplomatic agent and therefore has no personal immunity from a divorce suit.  *See* Vienna Convention, Art. 37(2).  Instead, he argues that Ms. Peeters' employment compensation information is inviolable as "archives of the mission" under the Vienna Convention, *see* Vienna Convention, Art. 24, and that, lacking such information, the Court cannot justly adjudicate claims for equitable distribution and alimony.  Mem. at pp. 2-3.

Mr. Mlotek provides no support for the proposition that the personal compensation information of an individual embassy employee is protected under the Vienna Convention as "archives of the mission."  *See* Mem. at p. 7 (stating only that "there would appear to be little, if any grounds for arguing that records and information relating to employee salary, benefits, pension records, and the like would fail somehow to qualify as 'archives of the mission'").  Ms. Peeters was unable to locate any authority supporting Mr. Mlotek's position, most likely because Article 24 was intended to "'protect the privacy of diplomatic communications,'" EILEEN DENZA, DIPLOMATIC LAW: A COMMENTARY ON THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS 163 (Oxford Univ. Press 2d ed. 1998) (1976) (quoting *Shearson Lehman Bros. Inc.*

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

4

*v. Maclaine Watson & Co. Ltd. et al. (International Tin Council intervening)*,
[1988] 1 All ER 116; [1988] 1 WLR 16, 77 ILR 145), rather than to preclude
diplomatic staff from introducing evidence of their own individual financial
affairs in divorce proceedings.

Nor do the authorities to which Mr. Mlotek points support the
proposition for which he cites them.  Contrary to his assertion, the U.S.
Department of Justice's amicus brief filed in *Thai Lao Lignite (Thailand) Co.,
Ltd. v. Government of the Lao People's Democratic Republic*, No. 13-495 (2d
Cir. May 17, 2013) (hereinafter "Amicus Brief"), *available at*
http://www.state.gov/documents/organization/226366.pdf (last visited May 31,
2015), does not "support[] . . . Defendant's arguments regarding the
inviolability of documents or information relating to salary and benefits of
diplomatic mission employees."  Mem. at p. 8.  Instead, *Thai Lao Lignite Co.*
concerns a discovery dispute about "financial and operational records from
the Lao Government's embassy and U.N. mission," as well as "written reports
prepared by the embassy and U.N. mission for the Lao Government
concerning finances and accounts, and yearly proposals made to the Lao
Government for funding."  Amicus Br. at 20, 21.  Unlike the substance of
these documents, the salary, benefits, and pension information of one single
embassy employee is not intimately related to an embassy's ability to perform
the functions of its mission, *see* Vienna Convention, Art. 25, and so cannot be
considered "archives of the mission."

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

5

Mr. Mlotek's other citations are similarly differentiable. In *767 Third Avenue Associates v. Permanent Mission of the Republic of Zaire to the United Nations*, 988 F.2d 295 (2d Cir. 2003), a landlord attempted to evict the mission from its premises—which are inviolable under a separate provision, Article 22, of the Vienna Convention—for failure to pay rent, *id.* at 296. In *Taiwan v. U.S. District Court for the Northern District of California*, 128 F.3d 712 (9th Cir. 1997), the documents sought related to an embassy-like organization's functions and its relationship to an agency of the Taiwanese government, *id.* at 718. And in *Bancoult v. Secretary of State for Foreign and Commonwealth Affairs*, [2013] EWHC 1502 (Admin), the document in question was a classified embassy cable, *id.* ¶ 30. Not only is not one of these cases controlling precedent, but not one of them stands for the proposition that the personal employment compensation information of one single embassy employee is undiscoverable and inadmissible in a divorce proceeding.

Nor would Ambassador O'Sullivan's failure to comply with Mr. Mlotek's subpoena or efforts to quash it lend credence to Mr. Mlotek's theory. Mr. Mlotek served a procedurally improper subpoena commanding the personal presence of an ambassador, who is clearly subject to diplomatic immunity. *See* Vienna Convention, Art. 31(1). Moreover, there was absolutely no need for Mr. Mlotek to issue this subpoena because Ms. Peeters is more than willing to provide her employment compensation information

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington DC 20036
202.466.8960

6

and would certainly have responded to Mr. Mlotek's reasonable discovery requests, had he bothered to issue any.

Because Ms. Peeters' employment compensation information is not "archives of a mission" under the Vienna Convention, it is not inviolable and no waiver is required for the Court to consider it.

### III.   Ms. Peeters' Employment Compensation Information is Admissible.

Mr. Mlotek also argues that the Federal Rules of Evidence bar introduction of information regarding Ms. Peeters' employment compensation unless her Delegation participates in authenticating documents.  Mem. at 16. This argument lacks any legal basis.

Contrary to Mr. Mlotek's assertions, Ms. Peeters' own testimony regarding her employment compensation is not hearsay.  Federal Rule of Evidence 801(c), which this jurisdiction follows, defines "hearsay" as a statement that "the declarant does not make while testifying at the current trial or hearing" which is "offer[ed] in evidence to prove the truth of the matter asserted." *See also Smith v. United States*, 26 A.3d 248, 257 (D.C. 2011) (defining hearsay as "the in-court testimony of an out-of-court statement offered to prove the truth of the matter asserted").  Because Ms. Peeters would testify regarding her remuneration and retirement accounts *at the divorce hearing*, her testimony is squarely excluded from the definition of hearsay.  Moreover, Ms. Peeters is competent to testify about her financial affairs, of which she has personal knowledge.  *See* Fed. R. Evid. 602.

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

7

Nor, contrary to Mr. Mlotek's assertions, does the "best evidence" rule bar Ms. Peeters' testimony regarding her employment compensation and retirement accounts.  Mem. at p. 16 (arguing that such testimony would be "about what certain documents state, rather than adducing the documents themselves").  The best evidence rule "'requires that when the contents of a writing are to be proved the original must be produced unless its absence is satisfactorily explained.'"  *Abulqasim v. Mahmoud,* 49 A.3d 828, 837 (D.C. 2012) (quoting *Walker v. United States,* 402 A.2d 813, 813–14 (D.C. 1979)). But Ms. Peeters would not testify about her salary and pension benefits in order to prove the contents of her payroll and retirement account statements. Instead, these documents are additional proof that corroborates Ms. Peeters' testimony about her employment compensation, as recipient of which she has personal knowledge.  Moreover, these documents are both available and admissible, so the best evidence rule does not apply on its face.

There is no need for Plaintiff's employer to authenticate her payroll and retirement account statements because they are admissible as business records.  General Rule Q of the Family Division of the Superior Court Proceedings provides that

> [a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, **if made in regular course of any business,** and if it was the **regular course of such business to make such memorandum or record at the time of such act,**

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington DC 20036
202.466.8960

8

> **transaction, occurrence, or event or within a reasonable time thereafter**. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. The term "business", as used in this section, includes business, professional, occupation, and calling of every kind.

*Id.* Q(a); *see also id.* Q(b) (stating that reproductions of business records are "admissible in evidence as the original itself"). Plaintiff's payroll statements and retirement account statements are writings made by her employer and by her financial services institution in the regular course of their business, and therefore are business records admissible in evidence without need of further authentication. If testimony were regularly required to authenticate these kinds of documents, the workings of the D.C. Superior Court would grind to a halt.

### IV.    This Proceeding Implicates Ms. Peeters' Right to Due Process.

Because, as explained in Sections II and III, this Court may properly consider evidence of Ms. Peeters' financial affairs, Mr. Mlotek will suffer no due process violation if the Court equitably distributes the parties' property. However, Ms. Peeters will suffer a due process violation if the Court refuses to issue a divorce and equitably distribute the parties' property.

The Supreme Court has determined that there is a due process right to equal access to divorce. *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971). If this Court dismisses Ms. Peeters' action for divorce based on Mr. Mlotek's untenable theory, there is no court competent to issue her a divorce and

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202 466 8960

9

divide the parties' property. The United States federal courts will not hear

domestic relations matters "involving the issuance of a divorce, alimony, or

child custody decree," *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992),

and the Belgian courts cannot act unless and until Ms. Peeters—who has

lived outside of Belgium for the past forty years—establishes residency there,

Law of 16 July 2014 Holding The Code of Private International Law (Trans.

Caroline Clijmans & Paul Torremans), Art. 42 § 1 ("Belgian courts have

jurisdiction to hear actions regarding the marriage . . . if . . . in case of a joint

application, either spouse was habitually resident in Belgium when the

application was introduced" or "the spouse who introduces the application

was habitually resident in Belgium since at least 12 months when the

application was introduced . . . ."), *available at* http://www.ipr.be/data/

B.WbIPR%5BEN%5D.pdf (last visited June 3, 2015). Mr. Mlotek's

suggestion that the Court issue a divorce without distributing property is

impermissible under D.C. Code § 16-910 ("Upon entry of a final decree of . . .

divorce, . . . the court *shall* . . . assign to each party his or her sole and

separate property . . . and . . . value and distribute all other property and debt

accumulated during the marriage . . . ." (emphasis added)), and misreads

*Fernandez*, which explicitly permitted adjudication of property and alimony

issues related to a proceeding for dissolution of marriage, *Fernandez v.*

*Fernandez*, 545 A.2d 1036, 1043 (Conn. 1988). And in light of the fact that

the parties have already participated in seven mediation sessions totaling

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1'29 20th Street, NW
Suite 400
Washington, DC 20036
202 466.8960

10

over eighteen (18) hours in the four years since their separation, further ADR proceedings would be futile.

For all of these reasons, if this Court does not hear Ms. Peeters' complaint, then she will be denied "the only avenue to dissolution of [her] marriage[]," "exclu[ded] from the only forum effectively empowered to settle [her] dispute[]" with Mr. Mlotek, in contravention of the constitutional right articulated in *Boddie*, 401 U.S. at 376. Because the Court should avoid interpreting the Vienna Convention to yield an unconstitutional outcome, *see Bond v. United States*, 134 S. Ct. 2077, 2087 (2014), it should reject Mr. Mlotek's contention that Ms. Peeters' personal financial information constitutes "archives of the mission," deny Mr. Mlotek's Motion to Dismiss, and proceed to the merits of this case.

## V.     Mr. Mlotek Should Pay Ms. Peeters' Attorneys' Fees and Costs.

There is no colorable basis for Mr. Mlotek's argument that Ms. Peeters' personal financial information is subject to diplomatic immunity, preventing the Court from equitably distributing property and issuing a divorce. Ms. Peeters has incurred attorneys' fees and costs in responding to Mr. Mlotek's Motion to Dismiss, and he is able to and should bear these costs.

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202 466.8960

11

**WHEREFORE**, Plaintiff, Karin Peeters, respectfully requests that this Court:

A.    Deny Defendant's Motion to Dismiss for Lack of Jurisdiction;

B.    Proceed to grant the parties a divorce and equitably divide their property at the divorce hearing scheduled for June 10-11, 2015;

C.    Order Defendant to pay Plaintiff's attorneys' fees and costs incurred in connection with responding to his Motion to Dismiss; and

D.    Grant such other and further relief as this Court deems just and reasonable.

Respectfully submitted,

Katherine A. O'Rourke #475023
Emily J. Stolzenberg, #1024075
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
Phone: (202) 466-8960
Fax: 202-293-8103
korourke@feldesmantucker.com
estolzenberg@feldesmantucker.com
*Counsel for Plaintiff*

F T
L F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

12

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**FAMILY COURT**
**Domestic Relations Branch**

| | |
|---|---|
| **KARIN PEETERS**        ) | |
| ) | |
| *Plaintiff,*        ) | |
| ) | Case No. 2013 DRB 4222 |
| v.        ) | Judge Robert R. Rigsby |
| ) | Trial: June 10-11, 2015 |
| **RONALD MLOTEK**        ) | |
| ) | |
| *Defendant.*        ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES

1. Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502.

2. *State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379 (1930).

3. *Salvatierra v. Calderon*, 2001-1888 (La. App. 1 Cir. 10/2/02); 836 So. 2d 149.

4. *Abu-Hassan v. Al-Nsour*, 64 Va. Cir. 76 (2004).

5. *Fernandez v. Fernandez*, 545 A.2d 1036 (Conn. 1988).

6. EILEEN DENZA, DIPLOMATIC LAW: A COMMENTARY ON THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS 163 (Oxford Univ. Press 2d ed. 1998) (1976).

7. *Shearson Lehman Bros. Inc. v. Maclaine Watson & Co. Ltd. et al. (International Tin Council intervening)*, [1988] 1 All ER 116; [1988] 1 WLR 16, 77 ILR 145).

8. Brief for the United States of America as Amicus Curiae Supporting Appellants, *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of the Lao People's Democratic Republic*, No. 13-495 (2d Cir. May 17, 2013), *available at* http://www.state.gov/documents/organization/226366.pdf (last visited May 31, 2015).

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202 466.8960

9. *767 Third Avenue Associates v. Permanent Mission of the Republic of Zaire to the United Nations*, 988 F.2d 295 (2d Cir. 2003).

10. *Taiwan v. U.S. District Court for the Northern District of California*, 128 F.3d 712 (9th Cir. 1997).

11. *Bancoult v. Secretary of State for Foreign and Commonwealth Affairs*, [2013] EWHC 1502 (Admin).

12. Federal Rule of Evidence 801.

13. *Smith v. United States*, 26 A.3d 248 (D.C. 2011).

14. Fed. R. Evid. 602.

15. *Abulqasim v. Mahmoud,* 49 A.3d 828 (D.C. 2012).

16. *Walker v. United States,* 402 A.2d 813 (D.C. 1979)).

17. General Rule Q of the Family Division of the Superior Court Proceedings.

18. *Boddie v. Connecticut*, 401 U.S. 371 (1971).

19. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992).

20. Law of 16 July 2014 Holding The Code of Private International Law (Trans. Caroline Clijmans & Paul Torremans), *available at* http://www.ipr.be/data/B.WbIPR%5BEN%5D.pdf (last visited June 3, 2015).

21. D.C. Code § 16-910.

22. *Bond v. United States*, 134 S. Ct. 2077 (2014).

23. The equitable powers of this Court; and

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202 466.8960

14

24. The record herein.

Respectfully submitted,

Katherine A. O'Rourke #475928
Emily J. Stolzenberg, #1024075
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
Phone: (202) 466-8960
Fax: 202-293-8103
korourke@feldesmantucker.com
estolzenberg@feldesmantucker.com
*Counsel for Plaintiff*

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

15

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## FAMILY COURT
### Domestic Relations Branch

| | |
|---|---|
| **KARIN PEETERS** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**RONALD MLOTEK** )<br>)<br>*Defendant.* _____) | Case No. 2013 DRB 4222<br>Judge Robert R. Rigsby<br>Trial: June 10-11, 2015 |

### ORDER

Upon consideration of Defendant's Motion to Dismiss for Lack of Jurisdiction and Plaintiff's Opposition thereto, it is this _____ day of _____, 2015,

ORDERED, that Defendant's Motion to Dismiss for Lack of Jurisdiction shall be and hereby is DENIED.  And it is further

ORDERED, that Defendant shall pay Plaintiff's attorneys' fees and costs incurred in responding to his Motion to Dismiss.  And it is further

ORDERED, that Plaintiff shall submit an itemized list of costs and fees incurred within ten (10) days of the issuance of this Order.

SO ORDERED.

_____
Judge Robert R. Rigsby,
Superior Court of the District of Columbia

Copies to:

Katherine A. O'Rourke
Emily J. Stolzenberg
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
Phone: (202) 466-8960
Fax: 202-293-8103
korourke@feldesmantucker.com
estolzenberg@feldesmantucker.com
*Counsel for Plaintiff*

Ronald Sol Mlotek
8149 East Beach Drive, NW
Washington, DC 20012
ron.mlotek@yahoo.com
ronaldsmlotek@yahoo.com
*Defendant, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of June, 2015, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction was served via email and first-class mail on:

Ronald Sol Mlotek
8149 East Beach Drive, NW
Washington, DC 20012
ron.mlotek@yahoo.com
ronaldsmlotek@yahoo.com
*Defendant, pro se*

Emily J. Stolzenberg

F | T
L | F

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
Suite 400
Washington, DC 20036
202.466.8960

18

Exhibit C



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## DOMESTIC RELATIONS BRANCH, FAMILY COURT

## NOTICE OF HEARING

| | |
|---|---|
| KARIN PEETERS | Plaintiff |

vs

Case Number: 2013 DRB 004222

RONALD MLOTEK    Defendant

To: RONALD MLOTEK       Date Issued:   December 19, 2013

☒ A Complaint for DIVORCE         has been filed against you. A copy is attached.

☐ A Motion to         has been filed. A copy is attached.

**An Initial Hearing has been scheduled at the Superior Court of the District of Columbia, located at 500 Indiana Ave., NW, Washington, DC 20001, on** March 03, 2014 **at** 11:00 am **before Judge** ANYA A DAYSON **in** Courtroom JM-7

**Please bring this notice to your hearing.**

### *PLEASE READ THE FOLLOWING IMPORTANT NOTICES*

- For issues of Custody and/or Divorce please bring copies of the child(ren)'s birth certificates and your marriage license.
- For issues of Child Support, please bring two of your most recent pay stubs to the hearing.
- You may have an attorney represent you at any time during the case, but the Court will not appoint one for you.

Witness the Honorable Chief Judge of the Superior Court of the District of Columbia:

Clerk of the Superior Court of the District of Columbia

By: _____

_____, Deputy Clerk

Processed:

## RETURN OF SERVICE

☐ I personally served the Plaintiff/Defendant at the following address
_____ on (Date) _____ at (Time) _____ am/pm

☐ I personally served (Name) _____, a person of suitable age and discretion who lives with Plaintiff/Defendant. Physical Description: (Age) ____ ☐ Male ☐ Female; (Relationship to Plaintiff/Defendant) at
_____ on (Date) _____ at (Time) _____ am/pm.

☐ I served the Plaintiff/Defendant by certified mail( return receipt requested) on (Date) _____
to, (Address) _____,which is the Plaintiff's/Defendant's home.
The certified mail envelope was ☐ signed for, ☐ unclaimed, ☐ refused.

☐ I was unable to serve the Plaintiff/Defendant because the address is ☐ bad/nonexistent (relocate), ☐ correct, but I was unable to effectuate service prior to the hearing date (reissue).

*I solemnly swear of affirm under criminal penalties for the making of a false statement, that I have read the foregoing "Return of Service" and that the statements made in it are true to the best of my personal knowledge, information and belief.*

(Signature) _____ (Business Address) _____

Drbnohih.doc

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
*TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA*
**FAMILY COURT · DOMESTIC RELATIONS BRANCH**
*JUZGADO DE FAMILIA· DIVISIÓN DE RELACIONES DOMÉSTICAS*
**500 Indiana Avenue, N.W., Washington, D.C. 20001**

A Complaint for:
*Demanda de:*

☒ Divorce / *Divorcio*     ☐ Legal Separation / *Separación Legal*     ☐ Annulment / *Anulación*     ☐ Other: / *Otro*

☐ Custody / *Tutela*     ☐ Standby Guardianship / *Tutoría de Reserva*     ☐ Visitation / *Visitas*

In the Matter of:
*En la causa de:*   KARIN PEETERS

_____
**Plaintiff**
*Demandante*

Jacket Number
*Número del expediente*   13DRB1222

vs.

RONALD MLOTEK

_____
**Defendant**
*Demandado*

## SUMMONS
## *NOTIFICACIÓN*

TO:
*A:*   RONALD MLOTEK

Name
*Nombre*   8149 EAST BEACH DRIVE, N.W.

Address
*Dirección*   WASHINGTON, DC 20012

You are hereby SUMMONED to the Family Court of D.C. Superior Court and required to Answer the attached Complaint. Your Answer must be filed with the Clerk of this Court in the Family Court Central Intake Center, D.C. Superior Court, Room JM-520, 500 Indiana Avenue, N.W. Your Answer must be properly filed within twenty (20) days after service of this Summons and Complaint upon you. This 20-day period does not include the day on which you were served. A copy of your Answer must be served upon the plaintiff's attorney or plaintiff, whichever is indicated below. If you do not file your answer on time, the court may make orders affecting your marriage, your property, and custody and visitation of your children. You may be ordered to pay support and attorney fees. It is recommended that you seek the advice of an attorney to assist you in this case.

*Por medio de la presente se le ORDENA comparecer en persona al Juzgado de Familia en el Tribunal Superior del Distrito de Columbia y se le exige su contestación a la demanda adjunta. Debe presentar su contestación con el actuario de este tribunal en el "Family Court Central Intake Center" Tribunal Superior del Distrito de Columbia, Oficina JM-520, 500 Indiana Avenue, N.W. La contestación debe presentarse de manera adecuada dentro del plazo de veinte (20) días después de que este citatorio y demanda se le hayan entregado formalmente. Este plazo de 20 días no incluye el día de la notificación formal. Debe entregarse una copia de la contestación formalmente al indicado, ya sea el abogado del demandante o el demandante.*

**PLAINTIFF'S ATTORNEY OR PLAINTIFF**
*ABOGADO DEL DEMANDANTE O DEMANDANTE*

Name:
*Nombre:*   Katherine A. O'Rourke, Esq.

Address:
*Dirección:*   1129 20th Street, N.W., 4th Flr
Washington, DC 20036

Witness, the Honorable Chief Judge of the Superior Court of the District of Columbia and seal of said Court.
*Doy fe, el Honorable Juez Presidente del Tribunal Superior del Distrito de Columbia y el sello de dicho tribunal.*

SEAL
*Sello*

Clerk of the Superior Court
of the District of Columbia
*Actuario del Tribunal Superior del Distrito de Columbia*

Date of Issue:
*Fecha de emisión:*   12/9/13

By:
*Por:*   _____
Deputy Clerk
*Actuario Auxiliar*

*This summons expires 60 days from the date of issue noted above. This case will be dismissed if the Plaintiff fails to comply with Rule 4 (I).
(See back)
* Este citatorio se vence 60 días después de la fecha de emisión. Esta causa será sobreseída si el demandante no cumple con la Regla 4(I).
Please note that additional information is available on the reverse side of this form.
Favor de notar la información adicional al dorso de este formulario.*

FD(10)   WHITE-LEGAL RECORD COPY   GOLDENROD-SERVER'S COPY   YELLOW-SERVICE COPY (ENGLISH)   GREEN-SERVICE COPY (SPANISH)
*BLANCO- COPIA DE REGISTRO JURÍDICO   ORO- OFICIAL NOTIFICADOR   AMARILLO- COPIA DE NOTIFICACIÓN (inglés)   VERDE-COPIA DE NOTIFICACIÓN (español)*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Family Court**
**Domestic Relations Branch**

FAM
CENTRAL          NTER
2013 DEC 19 PM 4 47

| | |
|---|---|
| KARIN PEETERS,<br>Pursuant to SCR Dom Rel. 10(b)(7)<br>c/o Katherine A. O'Rourke, Esq.<br>Feldesman Tucker Leifer Fidell LLP<br>1129 20th Street, N.W., 4th Floor<br>Washington, D.C. 20036<br><br>*Plaintiff*<br><br>v.<br><br>RONALD MLOTEK<br>8149 East Beach Drive, NW<br>Washington, D.C. 20012<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 13-DRB-4222<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR ABSOLUTE DIVORCE AND OTHER RELIEF

Plaintiff, KARIN PEETERS, respectfully states as follows in support of her Complaint for Absolute Divorce and Other Relief ("Complaint"):

1.    This Court has jurisdiction over this action pursuant to D.C. Code 16-901 *et.seq.* and 11-1101 (2012).

2.    Plaintiff is an adult citizen of Belgium and has been a *bona fide* resident of the State of Maryland for the past six months.

3.    Defendant RONALD MLOTEK is an adult citizen of the United States, and has been a *bona fide* resident of the District of Columbia for more than six (6) months next preceding the filing of this Complaint.

4.    The parties were lawfully married to one another on December 3, 2000, in the District of Columbia and are currently married.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

5.    No children were born of the marriage.

6.    On or about July 17, 2011, the parties began living separate and apart, and they have continued living separate and apart without cohabitation and without interruption since that date, a period of time that is more than six (6) months next preceding the filing of this Complaint. The parties' separation has continued without cohabitation and without interruption since that time.    There is no expectation or reasonable possibility of reconciliation between the parties.

7.    The parties acquired certain tangible and intangible property during their marriage, including, but not limited to, real and personal property, automobiles, artwork, furniture and furnishings, pets, bank accounts, investment accounts and retirement asset(s).

8.    The Court should equitably distribute the parties' marital property after full consideration of all factors set forth in D.C. Code §16-910(b).

9.    Plaintiff owns sole and separate property that should be distributed to her.

10.    Plaintiff has and will incur attorney's fees and costs in having to file her Complaint for Absolute Divorce and Other Relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1.    Grant Plaintiff an absolute divorce from Defendant on the ground of separation without cohabitation for one year prior to the filing of this Complaint; and

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

2

2.      Determine which property is the parties' marital property, and value and equitably distribute the Parties' marital property accumulated during the marriage, after full consideration of all relevant factors set forth in D.C. Code §16-910(b); and

3.      Assign to Plaintiff her sole and separate property; and

4.      Award Plaintiff her attorneys' fees and costs; and

4.      Grant Plaintiff such other and further relief as this Court deems just and proper.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

3

## VERIFICATION

I solemnly swear and affirm, under penalty of perjury, that the foregoing Complaint for Absolute Divorce and Other Relief is true and correct to the best of my knowledge, information, and belief.

_____
Karin Peeters


Respectfully submitted,

Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., Fourth Floor
Washington, D.C. 20036
Phone: (202) 466-8960
Fax: (202) 293-8103
*Attorneys for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

4



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## DOMESTIC RELATIONS BRANCH, FAMILY COURT
### NOTICE OF HEARING

| | |
|---|---|
| _____**KARIN PEETERS**_____ | Plaintiff |
| **vs** | Case Number: 2013 DRB 004222 |
| _____**RONALD MLOTEK**_____ | Defendant |

To:   RONALD MLOTEK _____          Date Issued:   December 19, 2013 _____

☒ A Complaint for DIVORCE _____ has been filed against you. A copy is attached.

☐ A Motion to _____ has been filed. A copy is attached.

**An Initial Hearing has been scheduled at the Superior Court of the District of Columbia, located at 500 Indiana Ave., NW, Washington, DC 20001, on  March 03, 2014      at  11:00 am    before Judge  ANYA A DAYSON ____ in  Courtroom JM-7 _____**

**Please bring this notice to your hearing.**

### *PLEASE READ THE FOLLOWING IMPORTANT NOTICES*

- For issues of Custody and/or Divorce please bring copies of the child(ren)'s birth certificates and  your marriage license.
- For issues of Child Support, please bring two of your most recent pay stubs to the hearing.
- You may have an attorney represent you at any time during the case, but the Court will not appoint one for you.

Witness the Honorable Chief Judge of the Superior Court of the District of Columbia:

Clerk of the Superior Court of the District of Columbia

By: _____
                              , Deputy Clerk

Processed:

### RETURN OF SERVICE

☐ I personally served the Plaintiff/Defendant at the following address
_____ on (Date) _____ at (Time) _____ am/pm

☐ I personally served (Name) _____, a person of suitable age and discretion who lives with
Plaintiff/Defendant.  Physical Description: (Age) ____ ☐ Male ☐ Female; (Relationship to Plaintiff/Defendant) at
_____ on (Date) _____ at (Time) _____ am/pm.

☐ I served the Plaintiff/Defendant by certified mail( return receipt requested) on (Date) _____
to, (Address) _____ ,which is the Plaintiff's/Defendant's home.
The certified mail envelope was ☐ signed for, ☐ unclaimed, ☐ refused.

☐ I was unable to serve the Plaintiff/Defendant because the address is ☐ bad/nonexistent (relocate), ☐ correct, but I was
unable to effectuate service prior to the hearing date (reissue).

*I solemnly swear of affirm under criminal penalties for the making of a false statement, that I have read the foregoing "Return of Service" and that the statements made in it are true to the best of my personal knowledge, information and belief.*

(Signature) _____          (Business Address) _____

Drbnohih.doc

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**FAMILY COURT - DOMESTIC RELATIONS BRANCH**
**JUZGADO DE FAMILIA- DIVISIÓN DE RELACIONES DOMÉSTICAS**
**500 Indiana Avenue, N.W., Washington, D.C. 20001**

| A Complaint for: | | | | | |
|---|---|---|---|---|---|
| Demanda de: | ☒ Divorce / Divorcio | ☐ Legal Separation / Separación Legal | ☐ Annulment / Anulación | ☐ Other: / Otro | |
| | ☐ Custody / Tutela | ☐ Standby Guardianship / Tutoría de Reserva | ☐ Visitation / Visitas | | |

In the Matter of:
En la causa de:   KARIN PEETERS

_____
Plaintiff
Demandante

Jacket Number
Número del expediente   **13DRB1222**

vs.

RONALD MLOTEK

_____
Defendant
Demandado

## SUMMONS
## _NOTIFICACIÓN_

TO:
A:   RONALD MLOTEK

Name
Nombre   8149 EAST BEACH DRIVE, N.W.

Address
Dirección   WASHINGTON, DC 20012

You are hereby SUMMONED to the Family Court of D.C. Superior Court and required to Answer the attached Complaint. Your Answer must be filed with the Clerk of this Court in the Family Court Central Intake Center, D.C. Superior Court, Room JM-520, 500 Indiana Avenue, N.W. Your Answer must be properly filed within twenty (20) days after service of this Summons and Complaint upon you. This 20-day period does not include the day on which you were served. A copy of your Answer must be served upon the plaintiff's attorney or plaintiff, whichever is indicated below. If you do not file your answer on time, the court may make orders affecting your marriage, your property, and custody and visitation of your children. You may be ordered to pay support and attorney fees. It is recommended that you seek the advice of an attorney to assist you in this case.

_Por medio de la presente se le ORDENA comparecer en persona al Juzgado de Familia en el Tribunal Superior del Distrito de Columbia y se le exige su contestación a la demanda adjunta. Debe presentar su contestación con el actuario de este tribunal en el "Family Court Central Intake Center" Tribunal Superior del Distrito de Columbia, Oficina JM-520, 500 Indiana Avenue, N.W. La contestación debe presentarse de manera adecuada dentro del plazo de veinte (20) días después de que este citatorio y demanda se le hayan entregado formalmente. Este plazo de 20 días no incluye el día de la notificación formal. Debe entregarse una copia de la contestación formalmente al indicado, ya sea al abogado del demandante o el demandante._

**PLAINTIFF'S ATTORNEY OR PLAINTIFF**
_ABOGADO DEL DEMANDANTE O DEMANDANTE_

| Name: Nombre:   Katherine A. O'Rourke, Esq. | Address: Dirección:   1129 20th Street, N.W., 4th Flr. Washington, DC 20036 |
|---|---|

Witness, the Honorable Chief Judge of the Superior Court of the District of Columbia and seal of said Court.
_Doy fe, el Honorable Juez Presidente del Tribunal Superior del Distrito de Columbia y el sello de dicho tribunal._

SEAL
_Sello_

Date of Issue:   12/19/13
_Fecha de emisión:_

By:
Por:

Clerk of the Superior Court
of the District of Columbia
_Actuario del Tribunal Superior del Distrito de Columbia_

Deputy Clerk
_Actuario Auxiliar_

*This summons expires 60 days from the date of issue noted above. This case will be dismissed if the Plaintiff fails to comply with Rule 4 (I).
(See back)
* _Este citatorio se vence 60 días después de la fecha de emisión. Esta causa será sobreseída si el demandante no cumple con la Regla 4(I)._
Please note that additional information is available on the reverse side of this form.
_Favor de notar la información adicional al dorso de este formulario._

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Family Court**
**Domestic Relations Branch**

FAM
CENTRAL          ·  ·TER

2013 DEC 19  PM 4 47

KARIN PEETERS,                              )
Pursuant to SCR Dom Rel. 10(b)(7)          )
c/o Katherine A. O'Rourke, Esq.            )
Feldesman Tucker Leifer Fidell LLP         )
1129 20th Street, N.W., 4th Floor          )
Washington, D.C. 20036                     )
                                           )
         *Plaintiff*                       )
                                           )   Case No. 13-DRB-4222
         v.                                )
                                           )
RONALD MLOTEK                              )
8149 East Beach Drive, NW                  )
Washington, D.C. 20012                     )
                                           )
         *Defendant.*                      )

## COMPLAINT FOR ABSOLUTE DIVORCE AND OTHER RELIEF

Plaintiff, KARIN PEETERS, respectfully states as follows in support of

her Complaint for Absolute Divorce and Other Relief ("Complaint"):

1.      This Court has jurisdiction over this action pursuant to D.C.

Code 16-901 *et.seq.* and 11-1101 (2012).

2.      Plaintiff is an adult citizen of Belgium and has been a *bona fide*

resident of the State of Maryland for the past six months.

3.      Defendant RONALD MLOTEK is an adult citizen of the United

States, and has been a *bona fide* resident of the District of Columbia for more

than six (6) months next preceding the filing of this Complaint.

4.      The parties were lawfully married to one another on December

3, 2000, in the District of Columbia and are currently married.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

5.     No children were born of the marriage.

6.     On or about July 17, 2011, the parties began living separate and apart, and they have continued living separate and apart without cohabitation and without interruption since that date, a period of time that is more than six (6) months next preceding the filing of this Complaint. The parties' separation has continued without cohabitation and without interruption since that time.     There is no expectation or reasonable possibility of reconciliation between the parties.

7.     The parties acquired certain tangible and intangible property during their marriage, including, but not limited to, real and personal property, automobiles, artwork, furniture and furnishings, pets, bank accounts, investment accounts and retirement asset(s).

8.     The Court should equitably distribute the parties' marital property after full consideration of all factors set forth in D.C. Code §16-910(b).

9.     Plaintiff owns sole and separate property that should be distributed to her.

10.     Plaintiff has and will incur attorney's fees and costs in having to file her Complaint for Absolute Divorce and Other Relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1.     Grant Plaintiff an absolute divorce from Defendant on the ground of separation without cohabitation for one year prior to the filing of this Complaint; and

FELDESMAN
TUCKER
LEIFER
FIDELL LLP
1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

2

2.    Determine which property is the parties' marital property, and value and equitably distribute the Parties' marital property accumulated during the marriage, after full consideration of all relevant factors set forth in D.C. Code §16-910(b); and

3.    Assign to Plaintiff her sole and separate property; and

4.    Award Plaintiff her attorneys' fees and costs; and

4.    Grant Plaintiff such other and further relief as this Court deems just and proper.

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

3

## VERIFICATION

I solemnly swear and affirm, under penalty of perjury, that the foregoing Complaint for Absolute Divorce and Other Relief is true and correct to the best of my knowledge, information, and belief.

_____
Karin Peeters

Respectfully submitted,

Katherine A. O'Rourke, #475923
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., Fourth Floor
Washington, D.C. 20036
Phone: (202) 466-8960
Fax: (202) 293-8103
*Attorneys for Plaintiff*

FELDESMAN
TUCKER
LEIFER
FIDELL LLP

1129 20th Street, NW
4th Floor
Washington, DC 20036
tel 202.466.8960
fax 202.293.8103
www.FTLF.com

4



Before The
## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Family Court
Domestic Relations Branch

---

KARIN PEETERS
c/o Catherine O'Rourke, Attorney
Feldesman, Tucker, Leifer, Fidell LLP
1129 20th Street, NW, 4th Floor,
Washington, DC 20036

       Plaintiff

    v.

RONALD SOL MLOTEK
8149 East Beach Drive, NW
Washington, DC 20012
202.722.4375
ron.mlotek@yahoo.com

       Defendant, *Pro Se*

Case No.  2013 DRB 004222

A. Dayson, Judge

---

### DEFENDANT'S ANSWERS

TO PLAINTIFF"S COMPLAINT FOR DIVORCE

---

NOW COMES the Defendant, RONALD SOL MLOTEK, and respectfully submits the following responses to Plaintiff's Complaint, personally served upon him on Friday, January 17, 2014:

1.    Defendant at the outset notes that his responsive pleadings raise several novel legal issues and arguments.  To the best of Defendant's knowledge, these

present questions of first impression to the Superior Court, and quite possibly every other American court as well. Notwithstanding their novelty, Defendant advances these arguments in the reasonable, good faith belief that they present *bona fide* and significant questions of law.

2. For the record it is noted also that Defendant's Answer raises several claims arising under the U.S. Constitution, including that asserting jurisdiction over Plaintiff's Complaint results in infringing Defendants due process entitlements. The infringements claimed are specified, *infra*.

3. Lastly, attention is drawn to the fact that Defendant's responsive pleadings give rise, at the threshold, to several Federal questions. Foremost are questions relating to international law and the barriers it imposes on the Court's jurisdiction to hear this case. The administration and interpretation of United State international legal obligations are, quintessentially and preeminently, Federal questions. Indeed, it is arguably possible that the Federal courts possess exclusive jurisdiction over this litigation, pursuant to 28 U.S.C. § 1351. Accordingly, Defendant discloses that he is contemplating and investigating possible removal of this case to the U.S. District Court.

## FIRST ANSWER

### DEFENDANT DISPUTES THE COURT'S JURISDICTION
### OVER THE SUBJECT-MATTER

4.      The Court lacks jurisdiction over the subject matter of this Complaint,
and should dismiss it on those grounds.

5.      "Whenever it appears that the Court lacks jurisdiction of (sic.) the
subject matter, the Court shall dismiss the action."  S.C.R. Dom.Rel. 12(h)(3).
Pursuant to S.C.R. Dom.Rel 12(b)(1) and (2), the defense of lack of jurisdiction may
be asserted as part of this Answer, and Defendant accordingly does ao assert it
here.

6.      In this case, whatever jurisdiction the Court does possess is insufficient
to allow the dispute to be adjudicated in a manner that accords the Defendant
minimal procedural due process.  Lacking the judicial power to accord a defendant
due process in an adjudication equates to a lack of judicial power – i.e.: jurisdiction
-- to adjudicate it at all. That is the case here.

7.      The legal obstruction that prevents a full and fair adjudication arises
from the body of international law that creates and defines diplomatic immunity.
In that connection, the entire action is dominated by one central, overriding fact:
the special legal status and immunities from jurisdiction that Plaintiff enjoys, by
reason of her diplomatic employment.

8.      Three facts suffice to prove Plaintiff's diplomatic status, and they are
beyond reasonable dispute. Moreover, these facts will likely determine the

3

outcome in the case, if it is permitted to go forward, and for Defendant it will be an outcome extremely unjust:

> (a)   Plaintiff holds a diplomatic visa and immigration status in the U.S.;
>
> (b)   Plaintiff's diplomatic immigration status is dictated by one fact alone: that she is a non-resident alien whose employer is a foreign diplomatic mission in the U.S., i.e., the Delegation of the European Union to the United States (hereinafter "E.U. Delegation."); and
>
> (c)   These two facts in turn lead directly to an inescapable conclusion: that Plaintiff falls squarely within the definitions, contemplation, and legal  coverage of the Vienna Convention on Diplomatic Relations ("VCDR"). This multilateral treaty provides the primary basis for diplomatic immunity and inviolability, in contemporary international law. (The VCDR is codified at 23 U.S.T. (U.S. Treaties) 3227, and 500 U.N.T.S. (U.N. Treaty Series) 95.

9.   In short, it is incontrovertible: Plaintiff's legal status in the U.S. is that of "a member of a [foreign diplomatic] mission", as that term is defined in the VCDR at Articles 1(b) and (c). The VCDR definition is mirrored in the U.S. Diplomatic Relations Act, at 22 U.S.C. § 254a (*sic.*), *et seq.* Plaintiff has in fact enjoyed such diplomatic status for most of the 30 years of her presence in the U.S., working for two different diplomatic missions in that period.

4

10.     Plaintiff's status as a "member of a [diplomatic] mission" to the United States carries with it specific immunities/inviolabilities from U.S. jurisdiction. "Immunity" and "inviolability" exert the same legal effect: the protection of foreign diplomatic personnel, their property, and records from the power of host nation authorities – that is: to shield them from the "jurisdiction" of those authorities, to include their courts. The distinction in terminology is immaterial here. Even in diplomatic circles, "immunity" is commonly used to refer as well to "inviolability".

11.     It is true that Plaintiff does not enjoy "full" diplomatic privileges and immunities. As a member of the E.U. mission's "administrative and technical staff", she holds a rank lower than that of a "diplomatic agent". VCDR Articles 1(c)-(f). In consequence, Plaintiff's immunities are of a more limited, "official acts" variety. VCDR Art. 37(1). In addition, Plaintiff's privileges and immunities are limited by reason of her lengthy presence in the U.S. in diplomatic status. VCDR Art. 38(1).

12.     Despite the limitations on her immunities, Plaintiff nonetheless receives legal protection in respect of "official acts performed in the exercise of [her] functions." *Id.*

13.     Upon first examination, such limited and qualified immunity would not appear to obstruct Defendant husband in presenting his claims and evidence to this Court. In actuality, Plaintiff's seemingly insignificant legal protections will render it impossible to achieve a full, fair, and complete adjudication before this Court.

14.    This results from the fact that diplomatic immunity and inviolability –
even of Plaintiff's low-level variety -- automatically erects impenetrable shields,
prohibiting the gathering, presentation, and consideration of evidence essential to
this dispute.  Such evidentiary barriers deprive Defendant of his rights to
fundamental procedural due process.

15. Moreover, it is not Plaintiff's *own* diplomatic immunity that create all the
barriers to evidence gathering and presentation.  Instead, the preclusion of
evidence arises from the immunities and inviolability possessed by her diplomatic
mission employer, as well as that of her fellow mission members and the
inviolability of mission papers and records.  One way or another, diplomatic
immunity shields every aspect of activity and operations conducted in Plaintiff's
workplace,

16.    Crucially, the evidence precluded all goes directly to the essence of this
dispute:  the economic issues of spousal support and division of property.  Indeed –
apart from Defendant's annulment counterclaim – the only non-procedural dispute
in this case is precisely over these economic issues.  Absent those issues, the
parties would have no dispute.  So, the ultimate impact of immunity upon the
litigation – and upon Defendant's ability to defend his interests therein -- is
overwhelming.

17.    Numerous examples may be cited of the various kinds of evidence that
immunity will bar.  The common thread is they all relate to Plaintiff's financial
condition, resources, and capabilities, as compared with Defendant's -- a key legal

factor in adjudicating nearly any contested divorce. The evidentiary prohibitions encompass employment records and related information of any kind whatsoever concerning Plaintiff, including but not limited to: all compensation-related information such as salary statements and pay-scales; performance evaluations; position descriptions and job responsibilities; awards or reprimands; promotions and salary increases received or expected; general employment history; job security; pension benefit details; retirement age requirements; and all similar evidentiary material.

18. Diplomatic immunity and inviolability prohibit access to any such evidence, irrespective of the form in which it exists or might be presented: whether documentary, electronic, or as oral/written testimony from Plaintiff's fellow employees. E.U. mission documents and other information are protected even if concern the diplomatic staff as a whole: office-wide memoranda, "notices to employees", internal rules and regulations, etc.

19. Nothing residing on Plaintiff's office computer or network may be sought, produced, or heard by the Court, to include emails. It would be irrelevant that the information sought was purely personal and non work-related.

20. Even Plaintiff *herself* is legally barred from producing or testifying about any evidence relating to her employment-related matters mentioned. If she nonetheless volunteered such evidence, it still could not legally be introduced in evidence or authenticated by its custodian, as is required. Just like Plaintiff, custodian would likewise be a "member of the mission", and thereby enjoy

immunity from the requirement to give evidence.  Likewise, none of Plaintiff's own

employment-related testimony is capable of corroboration by witnesses who are

fellow mission members.  Both Court and Defendant will be kept in the dark about

such matters.  The Court will legally be prohibited from considering such evidence,

even if it should somehow get introduced into the record.

21.    No form of judicial compulsion may be used to obtain authenticated

evidence relevant to these essential subjects, e.g.: discovery, subpoena, request for

sanctions, order to show cause, contempt, or the threat or actuality of jail.

22.    All employment-related evidence that is relevant and material to this

case would be placed strictly off-limits, both to the Court and Defendant,

regardless of form, including but not limited to: documents and papers, electronic

files and records including emails; regular business records; and oral testimony.

No subpoena or other means of compulsion (sanctions, order to show cause, etc.)

may be used to obtain emails or other documents residing on Plaintiff's office

computer or network, even if non work-related.

23.    The physical location of the evidence would be irrelevant.  Diplomatic

immunity/inviolability cloaks embassy files and records wherever located, and by

whomsoever held, e.g.: the E.U. Delegation's accountants or banks.

24.    Neither Plaintiff nor her diplomatic employer is required to claim or

invoke the applicable immunity(ies) and inviolability.  By operation of law (the

VCDR) the immunity attaches *ab initio*, and it does not decay.  It persists until

such time, if ever, that the diplomatic mission elects to waive immunity, expressly

and formally. The mission alone may waive, not the employee. The process is formal, elaborate, and cumbersome. A diplomatic mission is under no obligation to waive, and rarely if ever does one do so in the face of judicial proceedings, even when not a party. No legal recourse is available for surmounting/circumventing diplomatic immunity.

25.    In short, when it comes to the statutory factors this Court must utilize in adjudicating Defendant's claims as to spousal support and division of property, Defendant will be wholly incapable of proving or disproving nearly each and every fact in his favor. In essence, Defendant husband would be legally prevented from effectively prosecuting his economic claims – which constitute the only essential, non-procedural issues in dispute.

26.  Beyond evidentiary obstructions, immunity will also defeat the Court's ability to enforce its judgments, in significant respects. For example, Plaintiff's salary is also diplomatically immune from any form of wage garnishment, attachment, or withholding.   She cannot waive this immunity, only her diplomatic mission can, therefore Plaintiff herself could not be blamed for an outcome that unjustly benefits her, and penalizes Defendant. No judicial compulsion lawfully could be used against her, or any person.

27.    Collectively, the obstacles and barriers immunity imposes have the impact of stacking the cards decisively against Defendant, from day one. Such deck-stacking manifestly infringes Defendant's fundamental due process entitlements by denying him the possibility of a fair trial.

28.     In asserting jurisdiction over this case, therefore, the D.C. Government's judicial arm would be compelling a defendant spouse, who was unwillingly hauled into divorce court, to defend his vital interests without recourse to favorable material evidence, and without ability to seek the Court's aid in enforcing certain of its judgments.  The procedural due process guarantee does not permit the Government to compel a defendant spouse to defend his vital interests, with one arm tied behind his back.

29.     For the reasons set forth, the Court should dismiss the Complaint for lack of subject matter and personal jurisdiction.

## SECOND ANSWER

### DEFENDANT OPPOSES AND REFUTES
### PLAINTIFF'S RELIANCE UPON S.C.R. Dom.Rel. 10(b)(7)

30.     Plaintiff's Complaint relies upon S.C.R. Dom.Rel. (10)(b)(7), in failing to declare her residence address, as would normally be required under the Rules. S.C.R. Dom.Rel. 10(b)(2).  An exemption is granted to "[a] party who has a *reasonable* basis to fear harassment or harm to the party or the party's family from disclosure of the party's residence address."  S.C.R. Dom.Rel. 10(b)(7) (Emphasis supplied.).

31.     In relying upon this exemption, therefore, Plaintiff is publicly proclaiming a weighty factual allegation: that Defendant is now, or at any time has been, a threat to Plaintiff's security and well-being, either physically and/or otherwise.  This allegation has been made on the record in Court, and thus has become publicly accessible.  Plaintiff's filings offer no proof for such a prejudicial

claim(s) against Defendant.

32.     Defendant categorically denies all aforementioned allegations -- explicit and/or implied -- contained in Plaintiff's sworn Complaint, namely, that she objectively has any "reasonable basis to fear" harm from the Defendant. Such allegations are utterly without factual basis of any kind, much less the "reasonable basis" required in the Rules. S.C.R. Dom.Rel. 10(b)(7).

33.     In direct consequence of such a false yet serious allegation(s), Defendant has suffered, and will continue to suffer, significant injury to reputation. By virtue of their falsity, such allegations qualify as actionable defamation, subject possibly only to the defense they were made in Court.

34.     If the protection of a judicial forum does in fact apply to Plaintiff's false and damaging allegation against Defendant, then allowing such allegation(s) to stand unchallenged would deprive Defendant husband of reputational property, without the due process constitutionally required.

35.     Beyond reputational injury, Plaintiff's failure to declare her residence adess does significant injury to Defendant's ability to obtain crucial evidence as to Plaintiff's housing costs and overall living expenses. Such evidence has obvious material bearing upon Defendant's claims for spousal support and a favorable division of property. Again, this would infringe Defendant's due process rights.

36.     Defendant respectfully submits, therefore, that this Court should take appropriate action to protect him from the injuries described. The Court should order Plaintiff's reference to S.C.R. Dom.Rel. 10(b)(7) stricken from her Complaint

11

and from the Record *in toto* as "immaterial, impertinent, or scandalous matter" S.C.R. Dom.Rel. 12(f). The Court should also rule that Plaintiff's reliance upon Rule 10(b)(7) in general be disallowed and that Plaintiff file an amended Complaint, stating her residence address, as the Rules require.

37. In the alternative, the Court should require Plaintiff to prove her allegation(s) at an evidentiary hearing, where Plaintiff would testify, under oath and subject to cross-examination, concerning her factual basis, if any, for relying upon the subject Rule, knowing that in making such reliance, she would publicly be making highly prejudicial allegations against Defendant.

38. Defendant claims entitlement to spousal support, both *pendente lite* and post-judgment.

39. The relevant evidence is amply sufficient to satisfy the equitable criteria the Statute sets forth for the basing the award of support. DC Code §§ 16-913(d)(1)-(9); *see also:* Defendant's Third Answer, *infra*.

40. The assertion just made presumes that obtaining the necessary evidence relating to the equitable factors and the economic issues will not be obstructed or prohibited by diplomatic immunity and inviolability. Defendant, of course, argues that in fact they *will* erect evidentiary barriers based upon immunity.. (*See:* Defendant's First Answer, asking that the Court dismiss for lack of jurisdiction, *supra*.)

## THIRD ANSWER

### DEFENDANT DISPUTES PLAINTIFF'S ASSERTION AS TO EQUITABLE FACTORS FOR DETERMINING SUPPORT AND DISTRIBUTION OF PROPERTY

41.     Plaintiff's Complaint, at para. 8, asserts that the Court should fully consider "all factors set forth in D.C. Code § 16-910(b)," pertaining to distribution of property.  Defendant admits this assertion in part, but denies the remainder.

42.     Defendant admits as obvious the fact that this Court should follow the law in adjudicating the division of marital property.  Defendant denies/disputes that Plaintiff's assertion should stop there – advancing no claim as to how the Court's findings on the issue should actually conclude.  Defendant denies what Plaintiff's assertion left *unsaid*.

43.     Defendant's response is to declare here specifically how the relevant facts of this dispute *should* lead the Court to find, in relation to the equitable "factors set forth in D.C. Code § 16-910(b)."  In specific, the evidence should fully justify the Court in finding that the balancing of equities affirmatively weighs in favor of Defendant husband.

44.     The relevant evidence supporting this assertion includes, but is not limited to the following.  Other examples exist:

        (a)     Plaintiff abandoned her Defendant husband, and did so in a manner and at a time that displayed callous indifference to Defendant's welfare and society's common norms of duties and conduct between spouses.

(b)     Specifically, the Court should find that the evidence shows Plaintiff wife acted with callous indifference to the fact that Defendant husband, at the time she elected to abandon him, had grown ill and elderly, and that the leading cause was the physical and mental impacts of having unjustly been forced into retirement after a 30-year career, via lay-off.

(c)     Further, the evidence should show that the underlying motivation for Plaintiff's abandonment was indeed the condition of his health.

(d)     Plaintiff deceitfully concealed and misrepresented essential facts concerning herself and her family.  Plaintiff well knew that such facts, if disclosed to Defendant prior to marriage, would cause him to reverse his decision to marry Plaintiff.  This allegation of fraud is the basis of Defendant's counterclaim for annulment of the marriage, asserted via a separate submission to the Court.

(c)     Even if, however, such deceit were found insufficient to warrant annulment, the evidence should still influence the balancing of equities in favor of Defendant husband, on support and property division claims.

(f)     Plaintiff withheld conjugal attention and affection from Defendant, on frequent occasions and in frequent ways, throughout most of their marriage.

(g)     Plaintiff's income from salary currently exceeds Defendant's pension income by a significant amount and is expected to continue so doing for at least seven years into the future.

(h)     Defendant, by reasons of health, is incapacitated from either seeking or holding future employment.

(i)     The parties' primary marital asset is their home, purchased in late 2006. The purchase was made at the peak of the bubble in housing prices; even so, the parties overpaid;, and the mortgage loan rates were also at a relative peak. Above all, both parties at the time had justifiable fears for Defendant husband's job-security, which were realized scarcely a year later, when Defendant learned of his impending job-loss.

(j)     This extremely unfortunate timing and price paid has caused, and will continue to cause Defendant husband significant injury, both economically, as well as through prolonged financial anxiety and stress. Plaintiff, too, has probably suffered. However, the evidence cited, and a good deal more, should result in a factual finding that attributes primary responsibility to Plaintiff wife, with favorable consequences for Defendant in the balancing of equities.

(k)     The evidence should demonstrate that, over several preceding years, Plaintiff wife had, repeatedly and  vexatiously, importuned Defendant husband that they leave his small Georgetown townhouse, and move to a newer, larger residence elsewhere.  Suppressing well-

founded doubts, Defendant reluctantly acceded to Plaintiff, for sake of
marital harmony.

(l)     The evidence should demonstrate that Plaintiff wife did, on two
occasions, direct acts of domestic violence against Defendant husband.
Plaintiff twice hurled wine glasses at her husband during arguments.
Such acts were criminally prosecutable, had her husband informed
authorities at the time.

(m)     The evidence should also demonstrate that, from the time she
abandoned Defendant husband, Plaintiff wife has displayed, and
continues displaying callous indifference toward her husband, his
welfare, and his health, something she well knew at the time was
declining.  She has cut off all contact with her husband, apart from the
tedium of email.  Defendant husband has been given no telephone
number or other contact information.  In event of misfortune or mishap
occurring to him, their six animal companions, and/or their residence,
Defendant husband has no way of rapidly notifying his estranged wife,
further evidencing her lack of concern.

(n)     The record should demonstrate that Defendant wife has extended
no offer of discussion or negotiation with the husband she abandoned.
Moreover, she has rejected out of hand several settlement proposals
Defendant husband has offered.  One proposal made the extremely
valuable offer of transferring to his wife a one-half ownership interest in

his solely-owned Georgetown property.  This, in exchange for his wife's

willingness to return to the marital abode for a trial reconciliation.

Plaintiff wife displayed bad faith in curtly rejecting the offer, while

advancing no counterproposal of her own.

## FOURTH ANSWER

### DEFENDANT CONTESTS
### PLAINTIFF'S DEMANDS FOR ATTORNEY'S FEES

47.     Plaintiff's claim for attorney's fees – both *pendente lite* and post-

judgment -- finds no basis in law or fact, on the present record.

48.     If Plaintiff is claiming attorney's fees under the rubric of spousal support

*pendente lite*, or "suit money", then Plaintiff should be required expressly so to

plead in her Complaint.

49.     The factual record here demonstrates clearly that support or "suit

money" should be awarded – if at all – *to* Defendant *from* Plaintiff, not *vice versa*.

Plaintiff's income exceeds Defendant's by a significant factor.  This disparity, with

reasonable certainty, will persist at least seven years into the future.

50.     Pursuant to statute and the Rules, if Plaintiff does not claim them as

*pendente lite* support, attorney's fees could be awarded only as sanctions for

Defendant's misconduct in the proceedings.  Having just begun, the proceedings

could scarcely have given rise to a complaint of misconduct on the part of either

party.  The attorney's fees claim should be found to be premature.

51.     Accordingly, Defendant should not be saddled in the interim with the

additional burden of a brooding fear that he may be compelled to pay attorney's

fees to the party who made him an unwilling Defendant, in a lawsuit he did not instigate, seeking a divorce he opposes.

52.     The Court should therefore dismiss Plaintiff's request for attorney's fees, allowing her to raise it again at the action's conclusion, assuming such request were then supported by law and factual record.

## PRAYER FOR RELIEF

53.     **WHERFORE**, Defendant respectfully prays this Court:

(a)     To dismiss Defendant's Complaint for lack of subject-matter jurisdiction, on the grounds that diplomatic immunity and inviolability defeat the full and fair exercise of the Court's jurisdiction over much, if not most of the factual evidence that goes to the essence of this dispute; and

(b)     In the event the Court *does* dismiss Plaintiff's Complaint on these grounds, to award Defendant his attorney's fees and costs, if any there be at that time; and

(c)     To direct Plaintiff to comply with the rule of procedure requiring her complaint to contain Plaintiff's address of residence. S.C.R. Dom.Rel. 10(b)(2); and

(d)     To disallow Plaintiff from relying upon the Rule 10(b)(7) exception to the general requirement for address disclosure, and should further direct her to submit an amended Complaint, and/or to strike any reference in the record to the Rule in question; or in the alternative

(e)     To schedule an evidentiary hearing offering Plaintiff opportunity to adduce proof, if any, for her highly prejudicial allegation that she has reasonable fears of harm from Defendant husband; and

(f)     In the event Plaintiff wife cannot/will not offer objective evidence for alleging fear of her estranged husband, to order the striking of all references in the record to Rule 10(b)(7), in connection with Defendant; and

(g)     To award Defendant pendente lite support to pay Defendant's legal fees, if any there be, in addition to such alimony as the Court may find equitable and appropriate, under the criteria in D.C. Code § 16-913(d); and

(j)     In the event the Court denies dismissal for lack of jurisdiction, to value the parties' assets and assign them either as  marital and or sole property; and

(k)     To distribute the marital property in accordance with the equitable criteria under D.C. Code § 16-910(b); and

(l)     In balancing the equities of the parties relative to spousal support and/or distribution of property, to find that the factual record supports a balancing of equities favoring Defendant; and

(m)     To deny Plaintiff's claims for attorney's fees as unjustified under law, and award them instead to Defendant; and

(n)     If the above enumeration omitted any request for relief , to grant Defendant any of the other requests for relief that he already has stated in

the main body of each answer, and to consider such requests as

incorporated here by reference, without necessity of restatement; and

(o)      To grant Defendant such other relief as the Court finds just,

equitable, and proper.

## VERIFICATION

I SOLEMNLY SWEAR, under penalty of perjury, that the facts and assertions statements contained in Defendant's Answers to Plaintiff's Complaint for Absolute Divorce are true and correct to the best of my knowledge, recollection, and belief.

Respectfully submitted,

_____

Ronald Sol MLOTEK, *pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served Plaintiff's attorney with a copy of Defendant's foregoing Answer and responses to Plaintiff's Complaint for Divorce, on the 7th day of February, 2014, by the following means:

(1)     Email attachment, in PDF format; and

(2)     Electronic delivery via the Superior Court's e-filing system.

Respectfully submitted,

_____

Ronald Sol MLOTEK, *pro se*

CO 929
Rev: 6/2012

## UNITED STATES DISTRICT AND BANKRUPTCY COURTS

## FOR THE DISTRICT OF COLUMBIA

Date: _____June 5, 2015_____


KARINA A. PEETERS
_____

Plaintiff

      vs.                             Civil Action No.: __15-835__ RC

RONALD S. MLOTEK
_____

Defendant

### NOTICE TO COUNSEL

       The above-entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to ___Judge Rudoplph Contreras (RC)___. All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for the judge's initials.)

       Pursuant to Local Rule 83.2(a) and (b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

       Finally, your attention is called to Local Rule 16.3 Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.


                           ANGELA D. CAESAR, Clerk

                  By: _____/s/ Rodney Davis, Jr._____
                              Deputy Clerk


CC: Katherine O'Rourke

